CITY AND COUNTY OF SAN FRANCISCO, et al., Plaintiffs,

v.

TUTOR–SALIBA CORPORATION, et al., Defendants.

No. C–02–5286 CW (EMC).

United States District Court, N.D. California.

Oct. 2, 2003.

Andrew Wood Ingersoll, Jessica Koren Nall, Sidney A. Majalya, Stephanie Powers Skaff, Farella, Braun and Martel, LLP, San Francisco, CA, Gayle J. Gribble, Louise S. Simpson, City Attorney's Office, San Francisco, CA, for Plaintiffs.

Martin G. Mamett, Nomi L. Castle, Robert Nida, Castle & Associates, Los Angeles, CA, William T. Eliopoulos, Rutan & Tucker, San Jose, CA, David C. Veis, Edward D. Lodgen, Richard S. Busch, Robins, Kaplan, Miller & Ciresi LLP, Los Angeles, CA, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO COMPEL FURTHER SUPPLEMENT TO PLAINTIFFS' RULE 26(a)(1)(C) DISCLOSURE; DENYING DEFENDANTS' REQUEST FOR JUDICIAL NOTICE OF THE JUNE 5, 2003 SAN FRANCISCO DAILY JOURNAL ARTICLE (Docket No. 90)

CHEN, United States Magistrate Judge.

Defendants move to compel Plaintiffs to further supplement the Rule 26(a) disclosures regarding damages. Having reviewed the parties' briefs and accompanying submissions, having considered the oral argument of counsel on September 17, 2003, and good cause appearing therefor, the Court hereby GRANTS Defendants' motion and orders Plaintiffs to supplement their initial damages disclosure pursuant to Federal Rule of Civil Procedure 26(a)(1)(C). Further, the Court DENIES Defendants' request for judicial notice of the June 5, 2003, San Francisco Daily Journal article.

## I. DISCUSSION

In their suit, Plaintiffs have filed a Second Amended Complaint ("SAC") containing detailed allegations of, *inter alia,* fraud and breaches of contract by Defendants in connection with several construction contracts

related to the San Francisco International Airport. The claims involved alleged fraud, contract and RICO claims in connection with six contracts in particular. Plaintiffs contend that Defendants fraudulently claimed to use minority subcontractors to increase their chances of winning the contracts. After winning them, Defendants are accused of fraudulently claiming increased payment for delays and schedule changes they were responsible for, fraudulently claiming payments and double billing for costs Defendants should have or did anticipate, and for unlawfully pressuring other actors to either assist or not disclose their fraud.

■ In their supplemental initial disclosure pursuant to Rule 26(a)(1)(C), submitted July 16, 2003, Plaintiffs stated damages for the general categories identified in their SAC's Prayer for Relief. Plaintiffs have stated $42,284,757 for Compensatory Damages, $6,880,000 for Liquidated Damages, $126,854,271 for Punitive Damages, and at least $16,965,000 in Statutory Penalties. They have also created an "Other" category with an unspecified amount of damages. This yields a total of $319,838,299 in specified damages as of the filing of their supplement. (Plaintiffs' Supplemental Damages Disclosure, pp. 2–3). Plaintiffs have also stated damages in their SAC, citing specific examples of fraud but without aggregating those claims into total damages categories. For example, in their discussion of fraud related to the minority subcontractor program, Plaintiffs claimed that Defendants fraudulently received $4,196,220 for using the subcontractor Scott–Norman Mechanical Joint Venture on the New International Terminal Contract (SAC, p. 16, lines 3–7).

Plaintiffs have offered their supporting documents to the Defendants for inspection as required by Rule 26(a)(1)(C), but are currently still in the midst of organizing them into a document depository in the manner Defendants have requested. Plaintiffs have promised to produce documents relied upon.

Defendants have filed a motion to compel further disclosures, arguing that Plaintiffs' initial damages disclosure is inadequate. Under Rule 26(a) governing initial disclosures, the parties must, among other things, disclose "a computation of any category of damages claimed" and make "available for inspection and copying ... the documents or other evidentiary material, not privileged or protected from disclosure on which such computation is based." Fed.R.Civ.P. 26(a)(1)(C). These initial disclosure must be based on the information "reasonably available" to the party at or within 14 days of the Rule 26(f) initial discovery conference. Rule 26(a)(1). Rule 26(e) also imposes a continuing obligation to supplement the initial disclosures whenever the parties find that the initial disclosures were "incomplete or incorrect," making the operation of Rule 26 the "functional equivalent of a Standing Request for Production under Rule 34." Rule 26(e) and *West's Federal Rules Decisions,* 1993 Advisory Committee Notes to Rule 26, 146 F.R.D. 401 at 631–632 (1993).

Rule 26 does not elaborate on the level of specificity required in the initial damages disclosure. While Defendants cite a number of cases in which courts have excluded evidence or granted summary judgment for failure to make adequate disclosures, these cases do not define the specificity required by Rule 26(a)(1)(C). These cases involve extreme situations in which the defendant was either prejudiced by plaintiff's conduct or entitled to summary judgment because of lack of any supporting evidence. *See Gilvin v. Fire,* 2002 U.S. Dist. Lexis 15249 (D.D.C. 2002), *American Realty Trust, Inc. v. Matisse Partners, L.L.C.,* 2002 WL 1489543 (N.D.Tx.2002), *Midwest Grain Products, Inc. v. Envirofuels Marketing, Inc.,* 1996 WL 445070 (D.Kan.1996) and *Colombini v. Members of the Board of Dirs. of the Empire College School of Law,* 2001 WL 1006785, 2001 U.S. Dist. Lexis 13405 (N.D.Cal.2001).

None of these cases are apposite the instant case. In *Gilvin,* the court excluded from trial claims for damages because the plaintiff failed to disclose the claim until just weeks before trial and provided no substantial quantification of the elements or computation of the claimed damages. *Gilvin,* 2002 U.S. Dist. Lexis 15249 at *8–10 (D.D.C.2002). In *American Realty Trust,* plaintiff suddenly claimed $30 million·more in damages on the eve of trial. *American Realty Trust,* 2002

WL 1489543, at *1, 2002 U.S. Dist. Lexis 12560 at *4 (N.D.Tx.2002). The previous damages claim had been limited to $200,000. *Id.*, 2002 WL 1489543 at *1, 2002 U.S. Dist. Lexis 12560 at *3. Because of the huge increase, the manner in which it fundamentally changed the nature and import of the case and the lateness of the disclosure, the court found that plaintiff had not complied with the requirements of Rule 26(a)(1)(C) and thus excluded the damages claim. In both *Midwest Grain Products* and *Colombini*, the plaintiffs "made no showing" whatsoever and "utterly failed" in their disclosure obligations. *Colombini*, 2001 WL 1006785 at *11, 2001 U.S. Dist. Lexis 13405 at *24 (2001).

Such extreme facts are not at issue here. Plaintiffs have identified documents and provided some damages estimates for various categories of damages claims. Its SAC contains a fair amount of detail. Absent more specific direction from the case law, guidance as to the adequacy of the disclosures must be gleaned from Rule 26(a)'s purpose: to "accelerate the exchange of basic information" that is "needed in most cases to prepare for trial or make an informed decision about settlement." *Id.*, 1993 advisory committee notes. *See Monroig v. RMM Records & Video Corp.*, 194 F.R.D. 388, 392 (D.Puerto Rico 2000) (accord). Moreover, early disclosure also functions to assist the parties in focusing and prioritizing their organization of discovery.

Given these purposes, the plaintiff should provide more than a lump sum statement of the damages allegedly sustained. As one treatise explained:

> The meaning of "category" of damages is not clear. Presumably, however, it requires more than merely the broad types of damages ("wrongful death," or " property damage," "bodily injury," etc.). To make the disclosure obligation meaningful, a more detailed specification of damages is apparently required: For example, in a personal injury case, the nature and extent of any injuries suffered must be disclosed, including amounts claimed for "general" damages (pain, suffering or disfigurement) as well as "special" damages (medical bills,

lost wages, cost of repairing damaged property, etc.).

Rutter Group, Fed. Civ. Proc. Before Trial § 11:166 (2001). Moreover, the "computation" of damages required by Rule 26(a)(1)(C) contemplates some analysis; for instance, in a claim for lost wages, there should be some information relating to hours worked and pay rate. *See Bullard v. Roadway Exp.*, 3 Fed.Appx. 418, 420 (6th Cir. 2001) (unpublished). *See also U.S. v. Rempel*, 2001 WL 1572190 (D.Alaska 2001) at *2 (government required to disclose computation of tax liability, the functional equivalent of damages calculation in a tort case); *First Nat. Bank of Chicago v. Ackerley Communications, Inc.*, 2001 WL 15693 at *6, n. 6 (S.D.N.Y.2001) (calculation of damages requires more than merely setting forth figure demanded); *Kleiner v. Burns*, 2000 WL 1909470 at *2 (D.Kan.2000) (defendant is generally entitled to a "specific computation" of damages). On the other hand, disclosing a precise figure for damages without a method of calculation may be sufficient in cases where other evidence is developed *e.g.* in the context of a preliminary hearing, and it is appropriate to defer further specification to *e.g.* development of expert testimony. *Pine Ridge Recycling v. Butts County*, 889 F.Supp. 1526, 1527 (M.D.Ga.1995). Moore's Federal Practice, Civil § 26.2 (2003).

■ The Court concludes that Plaintiff should provide its assessment of damages in light of the information currently available to it in sufficient detail so as to enable each of the multiple Defendants in this case to understand the contours of its potential exposure and make informed decisions as to settlement and discovery. More specifically, in this case, Plaintiffs' aggregation of *e.g.* compensatory damages for all claims, all contracts, and all defendants does not permit each Defendant to know the extent of its liability since the SAC alleges breaches and fraud with respect to six different contracts, each of them involving some defendants but not others. Nor are the Defendants able to discern how the compensatory damages claimed are distributed among the contracts. It would be useful to know, for instance, for both discovery organization as well as for settlement discussions, whether the bulk of

damages are attributable to one or two contracts. Nor are Defendants able to discern from Plaintiffs' initial disclosure which portion of the compensatory damages are attributable to breach of contract, fraud, and RICO claims. Because the merits analysis and assessment of likelihood of success may vary among the claims, knowing what portion of the damages are attributed to each claim would assist the parties in putting a settlement value on the case. Providing this information, even if based as tentative early information, would advance the litigation without imposing a significant burden on the Plaintiffs. The Court notes the fact that Plaintiffs disclose a very specific dollar amount ($42,284,757.00) for compensatory and other damages indicates that they have already engaged in a detailed calculation of damages.[1] While the Court does not yet mandate disclosure of precise calculations given that many of the documents which are likely to inform the calculation remain in Defendants' hands and some level of expert analysis may be required, *Pine Ridge Recycling, supra,* the Court contemplates that Plaintiffs will update its disclosure and provide greater detail as to its calculations as discovery progresses.

The Plaintiffs need not engage at this stage in the level of detail sought by Defendants who seek *e.g.* a breakdown for each alleged act of fraud, statutory violation, etc. Defendants seek, in effect, responses similar to broad contention interrogatories which in most circumstances are premature at this early stage of litigation. *See In re Convergent Technologies Securities Litigation,* 108 F.R.D. 328 (N.D.Cal.1985). Once document production has been substantially completed, however, Plaintiffs will have to provide more detailed disclosure of their calculations either by way of Rule 26 disclosure or through interrogatory responses.

The Court notes that the parties have acknowledged that Plaintiffs' initial damages disclosure under Rule 26(a) is merely a pre-liminary assessment and is subject to revision. *See* Fed.R.Civ.P. 26(e) (providing for a party's duty to supplement or correct disclosure). As discovery proceeds, Plaintiffs may, indeed must, supplement their initial damages disclosure to reflect the information obtained through discovery. So long as Plaintiffs timely fulfill their disclosure obligations, they will not be prejudiced for making initial disclosures that are revised.[2]

## II. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to compel further supplement to Plaintiffs' Rule 26(a)(1)(C) disclosures. Plaintiffs are ordered to supplement their initial damages disclosure by specifying the damages allegedly sustained for each contract at issue. For each contract, Plaintiffs should disclose compensatory damages by contract, non-contract, and RICO-related damages. Damages based on RICO violations need not be broken down by statutory subpart. Statutory damages shall be broken down by contract; further allocation by statute is not required. Liquidated damages should be supplemented so as to be allocated by contract as well. In addition, Plaintiffs should allocate liquidated damages by the time periods since different rates apply to different time periods. The supplemental damages disclosure should be completed within thirty days of this order and the production of documents supporting those computations within forty-five days of this order.

Finally, the Court DENIES Defendants' motion to take judicial notice of the San Francisco Daily Journal Article dated June 5, 2003, by Tyler Cunningham and John Roemer, entitled "Nuts, Bolts and Fraud" (supplied by Defendants as Exhibit 14 to the Declaration of Martin G. Mamett). Not only is the article irrelevant, but the purpose for which the request was made does not constitute a proper purpose for which the Court

---

1. This is not meant to imply that a more generalized "computation" would have relieved Plaintiffs of the obligation of providing further disclosure.

2. This Court notes that it has found numerous occasions where Defendants have attributed statements to Plaintiffs without specific record citation. In the future, if either party makes such an attribution, it must provide a specific reference. Failure to do so will result in any such assertion being stricken.

could take judicial notice. *See* Fed.R.Evid. 201(b) (permitting judicial notice of facts not subject to reasonable dispute).

IT IS SO ORDERED.