Harvey **SENDER**, Trustee of the Lifeblood Biomedical, Inc. Liquidation Trust and Harvey Sender, Trustee of the Lifeblood Biomedical, Inc. Opt–In Trust, Plaintiffs,

v.

William Jeffrey **MANN**, an individual, Freeborn & Peters, an Illinois partnership, Michael Sabian, an individual, Darwin J. Poyfair, an individual, James R. Leone, P.A., a Florida professional association, James R. Leone, an individual, Defendants.

Civ.A. No. 01–B–2315CBS.

United States District Court, D. Colorado.

Dec. 14, 2004.

7. In this case, all of the Plaintiff's claims seek monetary damages.

John C. Smiley, Lindquist & Vennum, P.L.L.P., Denver, CO, for Plaintiff.

William Wells, II, Greenville, SC, Pro Se.

Daniel N. Brodersen, Miller, South & Michaussen, P.A., Winter Park, FL, Carolyn J. Fairless, Julie M. Walker, Michael L. O'Donnell, Wheeler Trigg Kennedy LLP, David W. Furgason, Herbert Anthony Delap, Dufford & Brown, P.C., Denver, CO, Ward Meythaler, Merkle & Magri, P.A., Tampa, FL, James R. Leone, James R. Leone, Attorney at Law, New Smyrna Beach, FL, Kristi J. Livedalen, Fleishman & Shapiro, PC, Denver, CO, for Defendants.

## MEMORANDUM ORDER REGARDING DEFENDANTS' MOTION TO STRIKE AND PRECLUDE PLAINTIFF'S WITNESSES AND EXHIBITS NOT PREVIOUSLY OR PROPERLY DISCLOSED

SHAFFER, United States Magistrate Judge.

THIS MATTER comes before the court on Defendants Darwin Poyfair, Michael Sabian

and Freeborn & Peters'[1] Motion to Strike and Preclude Plaintiff's Witnesses and Exhibits Not Previously or Properly Disclosed (hereinafter "Defendants' Motion to Strike"), filed on April 5, 2004 (Document # 335), and Supplement thereto filed on April 9, 2004. Based upon Sender's allegedly deficient Fed. R.Civ.P. 26(a)(1) disclosures, the Freeborn Defendants have moved to exclude witnesses and exhibits pursuant to Fed.R.Civ.P. 37(c)(1), arguing that Sender's failure to disclose or properly supplement his initial disclosures lacked substantial justification and was not harmless under the particular circumstances of this case. Sender filed a Response to Freeborn Defendants' Motion to Strike and Preclude Witnesses and Exhibits (hereinafter "Sender's Response") on April 26, 2004. The Freeborn Defendants filed their Reply in Support of Motion (hereinafter "Defendants' Reply") on May 11, 2004.

By Order of Reference, dated October 17, 2002, this matter was referred to the Magistrate Judge to, *inter alia*, "hear and determine pretrial matters, including discovery and other non-dispositive motions." This court heard oral argument on the pending motion during hearings on May 18, and December 1, 2004. For the following reasons, the Freeborn Defendants' motion is granted in part and denied in part.

## FACTUAL BACKGROUND

This action was commenced on November 30, 2001 by Harvey Sender, Trustee of the Lifeblood Biomedical, Inc. Liquidation Trust and the Lifeblood Biomedical, Inc. Opt-in Trust. The original Complaint asserted 34 separate claims against 11 different defendants, including the Freeborn Defendants. An Amended Complaint was filed on December 7, 2001, and remained the operative pleading for purposes of Sender's Rule 26(a)(1) disclosures.[2] That pleading, totaling 76 pages, alleged facts and events that occurred between December 1996 and December 1999. Sender maintains that the Defen-

---

1. For purposes of this Memorandum Order, Defendants Freeborn & Peters, LLP, Michael Sabian and Darwin J. Poyfair are referred to collectively as "the Freeborn Defendants."

2. Sender filed his current Second Amended Complaint, filed on February 11, 2204. The Second Amended Complaint does not substantially change the factual allegations that are relevant to the issues raised in the Freeborn Defendants' motion to strike.

dants participated or aided and abetted in a Ponzi scheme prior to the bankruptcy filing of Lifeblood Biomedical, Inc. The Amended Complaint generally alleged that Defendants Mann and Wells perpetrated a Ponzi scheme by issuing promissory notes through Lifeblood Biomedical, Inc. to approximately 200 individuals and entities who are now unsecured creditors of Lifeblood. *See* Amended Complaint, at ¶ 1. These unsecured creditors of Lifeblood are beneficiaries of the Liquidation Trust and many are also beneficiaries of the Opt–In Trust. It is alleged that Mann and Wells furthered their Ponzi scheme by falsely representing to investors and brokers that the promissory notes were being issued and backed by reputable business entities, that the promissory notes were bonded or insured, that the proceeds from the promissory notes would be used for legitimate business purposes, that interest payments on the promissory notes would be made and that the notes would be fully redeemed in nine months, upon maturity, and that Lifeblood Biomedical and related entities were viable companies actively engaged in legitimate business activities. *See* Amended Complaint, at ¶¶ 31–32. The Amended Complaint alleged that Mann and Wells were liable for fraud, breach of fiduciary duties, conspiracy, fraudulent transfers, and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.,* and the Colorado Organized Crime Control Act ("COCCA"), §§ 18–17–101 *et seq.*

The Amended Complaint further alleged that the Freeborn Defendants were liable for aiding and abetting the fraud and breach of fiduciary duties committed by Mann and Wells, aiding and abetting the RICO and COCCA violations committed by Mann and Wells, for breaching their own fiduciary duty to the Lifeblood entities, for legal malpractice, for receipt of fraudulent transfers, and for conspiring with other defendants. Sender specifically alleged in the Amended Complaint that Mann furthered his fraudulent schemes by retaining the Freeborn Defendants to represent Lifeblood Biomedical and a related entity. The Amended Complaint averred that the Freeborn Defendants were aware that Mann and Wells were "soliciting renewals of matured Promissory Notes that

Lifeblood was unable to pay" and knew "that Mann and Wells had engaged in criminal conduct—a Ponzi scheme—in connection with the issuance and re-issuance of the Promissory Notes, and that Mann had been under investigation in connection with a promissory note scheme operated under the name of another company." *See* Amended Complaint, at ¶ 68. Sender maintained that the Freeborn Defendants prepared and reviewed "scripts" that were intended "to assist Mann and Wells in responding to law enforcement inquiries and investor inquiries regarding such schemes and the Lifeblood Promissory Notes at a time when Mann and Wells sought to conceal Lifeblood's inability to pay the Promissory Notes and their own diversion of funds." *See* Amended Complaint, at ¶ 71.

On January 22, 2003, the parties filed a proposed Rule 16 Scheduling Order which contemplated that "each party shall be allowed up to 25 depositions." This court accepted that numerical limitation without change. The court also accepted the discovery cut-off date of December 31, 2003, proposed by counsel for Sender and the Freeborn Defendants. The parties agreed to provide Rule 26(a)(1) disclosures by January 23, 2003.

Sender served his initial Rule 26(a)(1) disclosures on January 23, 2003. *See* Exhibit B attached to Defendants' Motion to Strike. Those initial disclosures stated that "individuals likely to have discoverable information that Plaintiff may use to support his claims" included

> [i]ndividuals who purchased Lifeblood promissory notes, listed on Exhibit A, attached. Such individuals have knowledge regarding the sale of promissory notes and the amounts owed to them pursuant to such notes.
>
> Brokers and marketing agents through whom Messrs. Mann and Wells sold promissory notes, listed on Exhibit B, attached. Such individuals have knowledge regarding the sale of promissory notes and, in some instances, other schemes attempted or contemplated by Mann and Wells.

Referenced Exhibits A and B identified 196 investors and 126 brokers, respectively. A

cursory review of addresses included on Exhibits A and B reveals investors and brokers geographically dispersed in at least 17 different states ranging throughout the East Coast and as far west as California. Sender supplemented his initial disclosures on October 31, 2003, November 20, 2003, and February 24, 2004. *See* Exhibits C, D and E attached to Defendants' Motion to Strike. None of these supplemental disclosures appear to reference investors or brokers, either generally or by specific name. More particularly, none of Sender's initial disclosures identified any investor or broker who would offer evidence concerning specific communications with any Freeborn Defendant or information concerning post-transaction conduct by a Freeborn Defendant.

The parties filed an initial proposed Final Pretrial Order on February 24, 2004. In that proposed Final Pretrial Order, Sender listed 163 brokers and 215 investors who "may" be called "to testify about information received regarding Lifeblood, reliance on such information, the impact that information would have had had it been disclosed," as well as "communications with defendants" and the effect of the fraud perpetrated on the brokers and investors.

The parties filed an amended proposed Final Pretrial Order on April 6, 2004. Attached to that document were Sender's lists of "will call" and "may call" witnesses. Sender did not designate any brokers or investors as "will call" witnesses. Sender's April 6th "may call" witness list included 163 brokers and 215 investors. Once again, Sender stated that if any brokers or investors were called at trial, they would "testify about information received regarding Lifeblood, reliance on such information, the impact that information would have had had it been disclosed, communications with defendants, [and] the effect of the fraud perpetrated on the brokers and their clients." The parties provided the court with yet another revised Final Pretrial Order on May 14, 2004, which included Sender's witness list. The May 14th Final Pretrial Order identified 5 brokers as "will call" witnesses and 21 brokers as "may call" witnesses, and included 15 investors as "will call" and 82 investors as "may call" witnesses. This court heard argument on the instant motion during a hearing on May 18, 2004. At that hearing, the court expressed its

> inclination at this point to find that there has been a violation of Rule 26(a) and (e). I don't believe the initial disclosures were sufficient to meet the requirements or the intent underlying Rule 26(a), and I don't believe that supplementation was undertaken at appropriate intervals.... Now, with respect to determining what an appropriate remedy is, again, in my view, an appropriate remedy is, in part, going to be a function of how many witnesses are on a witness list. If the plaintiff persists in its will-call and may-call list, then I—at this point, I believe that reopening discovery would not be an appropriate remedy because I think that would be unduly burdensome, and it would essentially force the defendants to bear the brunt of plaintiff's deficient disclosures. Now, to the extent their witness lists are substantially reduced, that might change the dynamic for the evaluation of prejudice.

*See* Transcript of May 18, 2004 Motions Hearing, at pp. 74–75. At the conclusion of that hearing, the court directed Sender's counsel to provide Defendants with updated witness and exhibits lists within ten calendar days.

On May 27, 2004, the court received Sender's Submission of Revised Witness List and Trial Exhibit List. This revised witness list identified 5 brokers and 20 investors as "will call witnesses." Sender's May 27th witness list deleted approximately 21 brokers and 72 investors who had been identified in the immediately preceding draft Final Pretrial Order. Sender also identified on the May 27th witness list an additional 16 "may call" witnesses, none of whom were brokers or investors.

More recently, during a hearing on December 1, 2004, Sender's counsel advised the court and defense counsel that Sender will further limit to 15 the number of investors who will testify at trial either through live or deposition testimony. Sender has been directed to provide Defendants with the names of these 15 investors on or before December 13, 2004.

## ANALYSIS

### I. *The Sufficiency of Sender's Initial Disclosures*

 Rule 26(a)(1)(A) of the Federal Rules of Civil Procedure provides that a party must disclose, without awaiting a formal discovery request, "the name ... of each individual likely to have discoverable information *that the disclosing party may use to support its claims or defenses,* unless solely for impeachment, *identifying the subjects of the information.*" *See* Fed.R.Civ.P. 26(a)(1)(A) (emphasis added). This court has found very few cases that address the degree of specificity required under Rule 26(a)(1). However, some guidance can be gleaned from the purposes underlying the Rule itself. Rule 26(a)(1) disclosures are designed to accelerate the exchange of basic information and "help focus the discovery that is needed, and facilitate preparation for trial or settlement." *See* Advisory Committee Notes to 1993 Amendments to Fed.R.Civ.P. 26(a). Initial disclosures should provide the parties "with information essential to the proper litigation of all relevant facts, to eliminat[e] surprise, and to promot[e] settlement." *Windom v. FM Industries, Inc.,* 2003 WL 21939033 (D.Neb.2003) (quoting *Rolscreen Co. v. Pella Prods. of St. Louis, Inc.,* 145 F.R.D. 92, 94 (S.D.Iowa 1992)). *See also City and County of San Francisco v. Tutor-Saliba Corp.,* 218 F.R.D. 219, 221 (N.D.Cal. 2003) (noting that Rule 26(a) seeks to " 'accelerate the exchange of basic information' that is 'needed in most cases to prepare for trial or make an informed decision about settlement' "). To that end, initial disclosures should be "complete and detailed," and should "give the opposing party information as to the identification and location of persons with knowledge so that they can be contacted in connection with the litigation." *Crouse Cartage Co. v. National Warehouse Investment Co.,* 2003 WL 23142182 (S.D.Ind. 2003) (quoting *Biltrite Corp. v. World Road Markings, Inc.,* 202 F.R.D. 359, 362 (D.Mass. 2001)). "Indicating briefly the general topics on which such persons have information should not be burdensome, and will assist other parties in deciding which depositions will actually be needed." *See* Advisory Committee Notes on the 1993 Amendments to Fed.R.Civ.P. 26(a).

In short, the Rule 26(a)(1) disclosure requirements should "be applied with common sense in light of the principles of Rule 1, keeping in mind the salutary purposes that the rule is intended to accomplish. The litigants should not indulge in gamesmanship with respect to the disclosure obligations." *See* Advisory Committee Notes to 1993 Amendments to Fed.R.Civ.P. 26(a). *See also Fitz, Inc. v. Ralph Wilson Plastics Co.,* 174 F.R.D. 587, 589 (D.N.J.1997) (Rule 26 disclosure requirement should be applied with common sense). Counsel who make the mistake of treating Rule 26(a)(1) disclosures as a technical formality, rather than as an efficient start to relevant discovery, do their clients no service and necessarily risk the imposition of sanctions.

 Under the particular facts of this case, I find that Sender's Rule 26(a)(1) disclosures were deficient. On January 23, 2003, Sender disclosed the names of 196 investors and 126 brokers purportedly "hav[ing] knowledge regarding the sale of promissory notes and the amounts owed to them pursuant to such notes" or *"in some instances,* hav[ing] knowledge of other schemes attempted or contemplated by Mann and Wells." *See* Exhibit B attached to Defendants' Motion to Strike. Notably, Sender's initial disclosures did not even bother to identify with any greater specificity those particular brokers who allegedly have knowledge of other schemes attributed to Messrs. Mann and Wells.

 Rule 26(a)(1) requires initial disclosures based upon information then reasonably available to the disclosing party. Rule 26(g) states that the attorney or party making disclosures pursuant to Rule 26(a)(1) must sign those disclosures, thereby certifying that "to the best of the signer's knowledge, information, and belief, formed after a *reasonable inquiry,* the disclosure is complete and correct as of the time it is made." *See* Fed.R.Civ.P. 26(g)(1) (emphasis added). During the hearing on May 18, 2004, Sender's counsel conceded that as of the date Sender served his initial disclosures, counsel had not interviewed all of the listed brokers and investors. *See* Transcript of Hearing on May 18, 2004, at 47–48. Sender seems to

suggest that an inquiry in advance of his Rule 26(a)(1) disclosures was impractical because "any effort to communicate with the note holders, most of whom are not represented by counsel, is time consuming and costly. Whether because of age, distrust, infirmity or degree of sophistication, it is difficult to communicate with these witnesses by telephone." *See* Sender's Response, at 6. Yet the very purpose of Rule 26(a)(1) disclosures is to minimize for both parties the expenditure of time and money. If a party is unwilling to conduct a reasonable inquiry in advance of making Rule 26(a)(1) disclosures, that party cannot defeat the purposes of Rule 26(a)(1) simply by providing a laundry list of undifferentiated witnesses. *See also In re Independent Service Organizations Antitrust Litigation,* 168 F.R.D. 651, 653 (D.Kan. 1996) (noting that a party cannot meet its discovery obligations, including obligations under Rules 26(a)(1) and 26(e)(1), "by sticking its head in the sand and refusing to look for the answers and then saying it does not know the answer"). Yet, that is precisely what Sender did in this case. Sender claims that his initial disclosures identified "every single one of the note holders and every single one of the brokers that we knew about in our 26(a)(1) disclosures, and we indicated that they would be testifying regarding—their knowledge regarding the sale of promissory notes." *See* Transcript of May 18, 2004 hearing, at 36. Having deliberately decided not to make a reasonable inquiry, Sender resorted to giving the same generic disclosure for every broker and note holder. *But see Gucci America, Inc. v. Costco Wholesale Corp.,* 2003 WL 21018832, *2 (S.D.N.Y. 2003) (holding that Rule 26(g) imposes an obligation to make a reasonable inquiry to ensure that the party's disclosures are complete *and* accurate).

In the context of this case, Rule 26(a)(1) requires more. For example, Sender alleged in the Amended Complaint that "the operators of Lifeblood offered a first tranche of Promissory Notes to members of the public in or about 1997," and that investors loaned funds to Lifeblood "relying on the misrepresentations and material omissions made and advanced by the operators of Lifeblood." *See* Amended Complaint, at ¶¶ 38 and 39. Sender further alleges that "in or about 1998,

Lifeblood, still under the control of Wells and Mann, issued a second tranche of Promissory notes to lenders, again propounding material misrepresentations and omissions on which the lenders relied in making their lending decisions." *See* Amended Complaint, at ¶ 41. Given these very specific allegations, it is difficult to see how Sender's initial disclosures or brokers and investors, which refer only to "the sale of promissory notes" and "other schemes attempted or contemplated by Mann and Wells," could "help focus the discovery" efforts of the Freeborn Defendants or the Leone Defendants. The initial disclosures are devoid of any information that would indicate which, if any, of these investors or brokers had information that Sender might use to prove the specific factual allegations against the Freeborn and the Leone Defendants, or any other aider and abettor for that matter.

> Before making initial disclosures, parties must "make a reasonable inquiry into the facts of the case." Parties need not conduct "an exhaustive investigation at this stage of the case, but one that is reasonable under the circumstances, focusing on the facts that are alleged with particularity in the pleadings."

*Lintz v. American General Finance, Inc.,* 1999 WL 619045, *3 (D.Kan.1999). *See also Aetna Casualty and Surety Co. v. Leahey Construction Co.,* 219 F.3d 519, 537 (6th Cir.2000) (to establish the "substantial assistance" element of aiding and abetting liability, the plaintiff must show that "the encouragement or assistance was a substantial factor in causing the tort"); *Primavera Familienstifung v. Askin,* 130 F.Supp.2d 450, 510 (S.D.N.Y.2001) ("a plaintiff alleging 'substantial assistance' by the aider and abettor must allege that the acts of the aider and abettor proximately caused the harm upon which the primary liability is predicated' "). The court is at a loss to understood how the initial disclosures relating to brokers and investors could have advanced the "just, speedy, and inexpensive determination" of this action, particularly given the numerical limitations on depositions incorporated in the parties' Scheduling Order.

To fully appreciate the deficiencies in Sender's initial disclosures, it may be helpful to focus on two specific witnesses. On January 23, 2003, Sender simply disclosed that all identified brokers "have knowledge regarding the sale of promissory notes and, in some instances, other schemes attempted or contemplated by Mann and Wells." Michael Kohut was included among the identified brokers. Notably, Mann and Wells were the only Defendants identified by name in the initial disclosures relating to brokers, such as Mr. Kohut. Sender's supplemental disclosures did not mention Mr. Kohut. Discovery in this case closed on December 31, 2003. Yet attached to Sender's March 5, 2004 Response to the Freeborn Defendants' Motions for Summary Judgment was an affidavit executed by Mr. Kohut. In his affidavit, dated March 2, 2004, Mr. Kohut states, in pertinent part,

> I originally heard about Lifeblood Biomedical, Inc. ("Lifeblood") from Mark Roy. I spoke to Mr. Roy, Bill Wells, and James Leone, an attorney, about Lifeblood's business before I sold Lifeblood promissory notes. I thought that the cord blood business sounded like a good business to invest in. I also talked to John Belles, of Pinnacle Marketing, about the business.... I spoke with James Leone at least a half dozen times about Lifeblood. These conversations occurred both before and after I sold notes. Mr. Leone told me that he was involved from the outset, that Lifeblood was going to go public and was going to be valuable. He told me it was okay in his opinion to sell the promissory notes without being registered.... I did not learn there was a problem with the repayment of the Lifeblood promissory notes until around January 1999, when interest payments stopped.... I did not find out there was a fraud until around February 1999, when I learned of the investigation being conducted by Laura Royal, State of Florida. I talked to another Lifeblood attorney, Michael Sabian.... I talked to Mr. Sabian in early 1999. He said he was going to help the investors and asked for information regarding noteholders that I had sold Lifeblood notes to. I sent registered letters to Mr. Sabian, and tried to call him again. Mr. Sabian stopped answering my calls.... If I had heard about the SEC subpoena, I would have asked Mr. Mann, Mr. Wells and Mr. Leone what was going on.

*See* Declaration of Michael Kohut, attached as Exhibit I to Sender's Response to the Freeborn Defendants' Motions for Summary Judgment. In his May 27, 2004 Revised Witness List, Sender states that Mr. Kohut will testify, in part, about "indirect communications with Mann, Wells and the Freeborn Defendants insofar as he received documents about (i) other Lifeblood-related investment programs, (ii) Lifeblood's purported activities, and (iii) script(s) prepared with the assistance of the Freeborn Defendants." Nowhere in Mr. Kohut's March 2, 2004 affidavit does the word "script" appear and there is no discernible reference to the Freeborn Defendants' "assistance" in preparing such scripts. Certainly, Sender's January 23, 2003 initial disclosures would not have put the Defendants on notice that Mr. Kohut had information directly connecting Mr. Leone to particular sales of promissory notes, or information relating to post-transaction communications involving a Freeborn Defendant.

The Freeborn Defendants also claim that only after they received Sender's March 5, 2004 Response to the Freeborn Defendants' Motions for Summary Judgment did they learn that another broker, John Belles, claimed to have had communications with Michael Sabian in approximately June 1997. Belle's March 2, 2004 affidavit states that he received a letter from Mr. Sabian "regarding whether limited liability partnerships were securities."

> I relied on Mr. Sabian's letter. When I received Mr. Sabian's letter from Mr. Wells, in approximately June 1997, I called Mr. Sabian and spoke to him about his letter. He confirmed to me that limited liability partnerships were not securities, and could be sold without a securities license, which I did not have.... I told Mr. Sabian that I wanted to be sure the limited liability partnerships would not result in the same securities questions that were being raised with the promissory notes, including the Lifeblood promissory notes. He said they would not.... In early 1999,

when interest payments had not been made for several months, I tried to contact Mr. Sabian again. I understood he was one of Lifeblood's attorneys, and left message (sic.) for him asking that he call me back. He did not return the call.

See Declaration of John Belles, attached as Exhibit J to Sender's Response to the Freeborn Defendants' Motions for Summary Judgment. Again, Sender's initial disclosures do not hint at the possibility that Mr. Belles would have such information, or indicate that he had direct communications with a Freeborn Defendant.

Sender argues that his initial disclosures fully comply with the requirements of Rule 26(a)(1), and that the Freeborn Defendants were free to contact each and every one of the investors and brokers. That argument, however, ignores or nullifies the Rule 26(a)(1)(A) requirement that the *disclosing party* "identify[ ] the subjects of the information" that the disclosed individuals may offer to support that party's claims or defenses. It also overlooks the "reasonable inquiry" obligation imposed upon the *disclosing party* under Rule 26(g). Taken to its logical extreme, Sender's argument would mean a party could frustrate the salutory purposes underlying Rule 26(a)(1)(A) by simply professing ignorance and providing an undifferentiated list of "possible" witnesses who may have information in support of that party's claims. Requiring a disclosing party to correlate initial disclosures to specific claims or defenses of particular adverse parties does not impose an unreasonable burden, particularly given the pleading party's obligations under Fed.R.Civ.P. 11(b)(3). *Cf. City and County of San Francisco v. Tutor–Saliba Corp.,* 218 F.R.D. at 221 (in a case involving detailed allegations of, *inter alia,* fraud and breach of contract relating to several construction contracts, held that plaintiff must provide Rule 26(a)(1) disclosures "in sufficient detail so as to enable each of the multiple Defendants in this case to understand the contours of its potential exposure and make informed decisions as to settlement and discovery"); *Norman v. CP Rail Systems,* 2000 WL 1700137 (N.D.Ill.2000) (noting that Rule 26(a)(1) is a "fairness rule, not a technicality;" Rule 26(a)(1) eliminates the

need to "slog through heaps of discovery material").

During the hearing on May 18, 2004, Sender's counsel seemed to take the position that his client's initial disclosures satisfied the purposes underlying Rule 26(a)(1) to the extent that Defendants were placed on notice that investors and brokers would be testifying about their knowledge regarding the sale of promissory notes. According to Sender's counsel, "it is clear that the knowledge of the sale of the promissory notes encompassed communications between [investors or brokers] and all of the defendants in this case." *See* Transcript of May 18, 2004 hearing, at 36–37. It is difficult to follow that logic, given Sender's concession that his counsel had not even bothered to interview the disclosed investors and brokers as of January 23, 2003. Sender's counsel interviewed investors and brokers only after the close of discovery, and only in the context of "preparing the final pretrial order and later in preparing a response to the Freeborn Defendants' motion for summary judgment." *See* Sender's Response, at 4–5. Sender's argument strikes this court as a transparent "after the fact" rationalization for his failure to comply with Rule 26(a)(1).

■ Consistent with the objective of facilitating trial preparation, Rule 26 requires a party to supplement its mandatory disclosures "at appropriate intervals" if that party "learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." *See* Fed.R.Civ.P. 26(e)(1). *See also Macaulay v. Anas,* 321 F.3d 45, 50 (1st Cir.2003) (once a mandatory disclosure is provided, it must be kept current); *Caldwell–Baker Co. v. Southern Illinois Railcar Co.,* 2001 WL 789389 (D.Kan.2001) (noting that "the supplementation requirement contemplates that initial disclosures may contain partial or incomplete information"). Webster's New Collegiate Dictionary defines "material" as "having real importance or great consequences." While the court has found no cases that address this precise issue, the objectives un-

derlying Rule 26(a)(1) suggest that information "is incomplete or incorrect" in "some material respect" if there is an objectively reasonable likelihood that the additional or corrective information could substantially affect or alter the opposing party's discovery plan or trial preparation. *Cf. United States v. Fiorillo*, 376 F.2d 180, 184 (2d Cir.1967) (the materiality of testimony turns on its potential to affect the course of the inquiry); *United States v. De Lucia*, 256 F.2d 487, 491 (7th Cir.1958) (information is "material" when it goes to substantial matters in dispute or has an effective bearing on the resolution of that dispute).

Sender argues that any deficiencies in his initial disclosures were cured by Sender's discovery responses and disclosures made by other means.[3] *See* Sender's Response, at 8. However, the record suggests otherwise. The Freeborn Defendants' First Set of Discovery included Interrogatory No. 17 which specifically asked Sender to "describe any and all communications between any 'individuals who purchased Lifeblood promissory notes' as identified in your Rule 26 disclosures and any of [the Freeborn Defendants]." On June 3, 2003, Sender supplemented his response to Interrogatory No. 17 as follows: "[s]ubject to the General Objections, see documents marked LIFE17632–37, POY733–36, POY348–50, POY355–60, POY365–69, SW1104, POY438–40, SAB46, LIFE17855–57, LIFE17870–907, and LV3674–93, previously produced." *See* Exhibit 5 attached to Sender's Response. The court has personally reviewed the documents cited in this supplemental response. The vast majority of the referenced documents are completely non-responsive to Interrogatory No. 17. In fact, the cited documents only include communications between three investors and the Freeborn Defendants.[4] On January 6, 2004, Sender again supplemented his response to Interrogatory No. 17, as follows:

> The Trustee objects to this request on the grounds that the information sought is nei-

ther relevant nor reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, counsel for the Trustee has been advised from time to time that one noteholder may have spoken to another. There were also communications among the members of the Unsecured Creditors Committee and the Beneficiaries Committee. No consistent record of any such communications has been maintained. To the extent that counsel has notes regarding such communications, they are protected from discovery by the attorney work product doctrine.

Setting aside the questionable validity of Sender's boilerplate objection, the information provided in this supplement is not responsive at all to Interrogatory No. 17, which specifically sought information about communications between investors and the Freeborn Defendants.

The Freeborn Defendants' Interrogatory No. 18 asked Sender to "describe any and all communications between 'brokers and marketing agents through whom Messrs. Mann and Wells sold promissory notes' as identified in your Rule 26 disclosures and [any of the Freeborn Defendants]." Sender's Supplemental Response to Interrogatory No. 18, dated January 6, 2004, stated:

> The Trustee objects to this request on the grounds that the information sought is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, see answer to interrogatory No. 17 and Ryan Rule 2004 Examination Exhibits 15, 16, 17, 18, 21, 23 and 24; Deposition Transcripts of Eric Brumagin, Jeffrey Buck, Paul Fasullo, Curtis Creek, Russell Jones, Todd Nye, Mark Roy, Robert Ryan, Consolidated Capital, John Santoro, and Joseph Shedlock; R & D Marketing Brochure at LV4738–4757. MDSEC264, McG51, Sab46, Life17511–17512, 17595–17618, 17622–17631, 17795–17891.

---

**3.** Sender also argues that his initial disclosures were no less informative than the disclosures provided by the Freeborn Defendants. That argument is undermined by Rule 26(a)(1) itself, which provides that "a party must make its initial disclosures based on the information then reasonably available to it and is not excused from making its disclosures … because it challenges the sufficiency of another party's disclosures."

**4.** Of these three investors, Salvatore Avena, Dee Baker, Robert Branch, only Mr. Baker appears on Sender's May 27, 2004 witness list.

*See* Exhibit F attached to Defendants' Motion to Strike. Messrs. Brumagin and Nye are the only brokers who are referenced in this supplemental response *and* in Sender's most recent list of trial witnesses. Mr. Kohut, a broker who appears on Sender's May 27, 2004 witness list, is mentioned in three of the documents cited in Sender's supplemental response to Interrogatory No. 17.[5] Mr. Belles, another broker who remains on Sender's "will call" witness list, is not mentioned at all in Sender's supplemental response to Interrogatory No. 18.

Although Rule 26(e)(1) recognizes that supplementation of initial disclosures can take various forms, alternative methods for supplementation must be consistent with and further the objectives underlying the mandatory disclosure requirement. Rule 26(e)(1) must be governed by the same "common sense" standard applicable to Rule 26(a), and supplemental disclosures should provide the opposing party with enough useful information to make informed decisions regarding discovery and trial preparation. Measured against this standard, Sender's supplemental responses to Interrogatory No. 17 and 18 do not meet the requirements of Rule 26(e)(1). Having agreed to limit each side to 20 non-expert depositions, Sender's interrogatory responses left the Freeborn Defendants with the choice of either requesting a substantial number of additional depositions, with all of the attendant costs, or hoping that they correctly guessed which of the approximately 300 investors and brokers ultimately would testify at trial. I conclude that the Rule 26(e) supplementation requirement contemplates greater precision, particularly in a case such as this. *See Santiago v. Furniture Chauffeurs, Piano Movers, Packers and Handlers Local 705*, 2001 WL 11058 *7 (N.D.Ill.2001) ("civil litigation is not a game of hide-the-ball"). Here, Sender is seeking compensatory damages in excess of $9 million, as well as treble damages and attorneys fees and costs, and has brought

claims involving multiple Defendants, alleged wrongdoing spanning a number of years, and generically identified more than 300 potential witnesses. It should also be noted that Plaintiff Sender had an opportunity to investigate the relevant facts in the context of bankruptcy proceedings that pre-dated the instant litigation. Under the particular circumstances of this case, mandatory and supplemental disclosures should have provided sufficient detail and clarity to permit each Defendant to make informed decisions about the discovery necessary to address the specific claims directed against that party, and to prepare for trial. *Cf. Dixon v. Certainteed Corp.*, 164 F.R.D. 685, 691 (D.Kan.1996) (noting that the a party's "reasonable inquiry" prior to making initial disclosures "will vary based upon such factors as the number and complexity of the issues; the location, number, and availability of potential witnesses ... and of course how long the party has to conduct an investigation, either before or after filing the case"). Sender's disclosures fall well short of that common-sense standard.

## II. Imposing an Appropriate Sanction

Rule 37(c)(1) of the Federal Rules of Civil Procedure states that where a party fails to make a disclosure required by Rule 26(a) or Rule 26(e)(1), that party may not use at trial any witness or information not so disclosed, unless the court determines that the failure to disclose was substantially justified or harmless. *See* Fed.R.Civ.P. 37(c)(1). The non-moving party has the burden of showing that they were substantially justified in failing to comply with Rule 26(a)(1). *Nguyen v. IBP, Inc.*, 162 F.R.D. 675, 680 (D.Kan. 1995). While Rule 37(c)(1) is written in mandatory terms, it also vests the court with discretion to impose "other appropriate sanctions" in addition to or in lieu of an order striking witnesses or evidence not properly disclosed. *See Woodworker's Supply, Inc. v.*

---

5. Mr. Kohut is referenced in SW001104 and POY000367, which are letters written to Lifeblood Medical, Inc. dated January 20, 1999. These letters, signed by Michael Kohut and D.F. Baker, demand payment in full of outstanding promissory notes. One document, SW001104 reflects that Michael Sabian was copied on that letter to Lifeblood BioMedical. Sender's supplemental discovery responses also included POY000355, which is a letter to Michael Sabian on December 15, 1998, purportedly sent by Robert Branch and Michael Kohut. That letter, which demanded payment in full of overdue promissory notes, was signed only by Mr. Branch.

*Principal Mutual Life Insurance Co.*, 170 F.3d 985, 993 (10th Cir.1999) (recognizing that Rule 37(c) vests broad discretion with the trial court). *See also Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir.2001) (noting that the district court's discretion should be given particularly wide latitude in imposing sanctions under Rule 37(c)(1)); *Ortiz–Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico*, 248 F.3d 29, 34 (1st Cir.2001) (holding that district courts have broad discretion in meting out Rule 37(c) sanctions for Rule 26 violations).

■ Sanctions should not be imposed under Rule 37(c)(1) where the failure to disclose was substantially justified or harmless. For purposes of Rule 37(c)(1), a party's failure to disclose is substantially justified where the non-moving party has a reasonable basis in law and fact, and where there exists a genuine dispute concerning compliance. *Nguyen v. IBP, Inc.*, 162 F.R.D. at 680. "Failure to comply with the mandate of the Rule is harmless when there is no prejudice to the party entitled to the disclosure." *Id.*

> The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court. A district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose. Nevertheless, the following factors should guide its discretion: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness.

*Woodworker's Supply, Inc. v. Principal Mutual Life Insurance Co.*, 170 F.3d at 993.

■ Applying the *Woodworker's* factors to the record before the court, I conclude that Sender's failure to comply with its obligations under Rule 26(a)(1)(A) and 26(e)(1) was not substantially justified. It appears that Sender made a deliberate decision not to conduct a reasonable inquiry into the information actually possessed by the disclosed investors and brokers, providing instead a description of anticipated testimony that were so general as to be virtually worthless

for purposes of making informed pretrial decisions. The court also does not find that Sender's non-compliance was harmless. *Cf. Lintz v. American General Finance, Inc.*, 1999 WL 619045, *6 (D.Kan.1999) (noting that non-compliance is harmless only when there is no prejudice to the opposing party). In weighing the element of prejudice or surprise, the court must take heed of the purposes underlying Rule 26(a)(1). "The importance of lay ... witness disclosures and the harms resulting from a failure to disclose need little elaboration." *Saudi v. Valmet–Appleton, Inc.*, 219 F.R.D. 128, 134 (E.D.Wis. 2003). While Sender is not required to marshal all of Defendants' evidence, Rule 26(a)(1) disclosures must be sufficiently detailed to allow Defendants to make intelligent decisions regarding how they will efficiently use the limited number of depositions permitted under the Rule 16 scheduling order. *Cf. D.L. v. Unified School District # 497*, 270 F.Supp.2d at 1241 (finding prejudice to the extent that plaintiffs' failure to make required Rule 26(a)(1) disclosures undermined defendants' ability to conduct discovery as to the non-disclosed witnesses). *Compare* 6 *Moore's Federal Practice* § 26.27[2][d] at 26–93 ("a failure to disclose witness information is 'harmless' if the other party was well aware of the identity of the undisclosed witness and the scope of their relevant knowledge well before trial").

Sender disputes any claim of prejudice by noting that virtually all of the investors and brokers reside beyond the court's subpoena power, thereby necessitating *de bene esse* depositions prior to trial. Sender reasons that Defendants can simply take a "discovery deposition" during the same trip and prior to each preservation deposition. As a practical matter, that "remedy" would afford Defendants little time to assimilate the information developed during the discovery deposition and prepare cross-examination for a preservation deposition. *Cf. Transclean Corp. v. Bridgewood Services, Inc.*, 77 F.Supp.2d 1045, 1064 (D.Minn.1999) (noting while a continuance and reopening of discovery might alleviate some of the prejudice caused by non-disclosure under Rule 26(a), "such a remedy would wreak its own distinctive prejudice," by unnecessarily prolonging the pre-

trial process and increasing the expense of litigation), *aff'd in part and vacated in part on other grounds,* 290 F.3d 1364 (Fed.Cir. 2002). Moreover, Sender has conceded that communication with many of the investors is complicated by their age or infirmities. It is reasonable to assume that those complications have not diminished with the passage of time. Truly informative Rule 26(a)(1) disclosures, provided in a timely manner, would have afforded Defendants an opportunity to make informed discovery decisions before memories became even dimmer. *Cf. Reddick v. Bloomingdale Police Officers,* 2003 WL 1733560, *11 (N.D.Ill.2003) (finding that plaintiffs had been prejudiced by defendant's belated Rule 26(a)(1) disclosures; during the intervening two years, the witness' recollection had substantially diminished). The Tenth Circuit also recognizes that delay and mounting attorneys fees can equate to prejudice. *See Jones v. Thompson,* 996 F.2d 261, 264 (10th Cir.1993).

As for the second and third *Woodworker's* factors, the court recognizes that a trial date has not been set in this case. That fact affords a greater ability to cure any prejudice to the Freeborn and Leone Defendants, and minimizes the possibility of trial disruption. However, the court cannot disregard the disruption that has already occurred as a result of Sender's deficient disclosures. To suggest that sanctions are not appropriate simply because the trial court can provide a further extension of time or delay the trial would effectively reward Sender's non-compliance. Rules 26(a)(1) and 26(e)(1) are designed to facilitate case management and the discovery process. Certainly, Sender's inadequate disclosures have disrupted those objectives.

Finally, with respect to the fourth factor, Defendants have not offered any evidence that would demonstrate that Sender's failure to comply with Rule 26(a)(1)(A) and Rule 26(e)(1) was the product of bad faith or willfulness. However, Sender's good faith alone may not be enough to overcome the other three factors. *Cf. Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 955 (10th Cir.2002), *cert. denied,* 537 U.S. 1066, 123 S.Ct. 623, 154 L.Ed.2d 555 (2002). Sender should not be permitted to ignore his disclosure obligations throughout the discovery period and then avoid sanctions simply by claiming his deficiencies were not willful.

Consistent with the primary goal of Rule 37 sanctions, which is to deter misconduct, "the sanction imposed should be the least severe of those available, which appears adequate to deter and punish the wrongdoer." *Hite v. The PQ Corp.,* 1998 WL 895893, *2 (D.Kan.1998). The Freeborn Defendants originally requested an order striking and precluding Sender from calling as witnesses at trial "any of the 195 investors regarding any communications with the Freeborn Defendants, or reliance upon any alleged script or other purported work product of Messrs. Sabian and Poyfair." The Freeborn Defendants also requested an order precluding "any of the 163 Brokers [from testifying] regarding any communications with the Freeborn Defendants except for the specific communications identified in response to Interrogatory No. 18." After carefully considering the *Woodworker's* factors and the objectives underlying Rule 37(c), I find that the sanctions specifically requested by the Freeborn Defendants are not warranted under the facts in this case. *See Scott v. IBM Corp.,* 196 F.R.D. 233, 247 n. 9 (D.N.J.2000) (noting that exclusion of evidence under Rule 37(c) is not appropriate unless the party failed to disclose or supplement in bad faith or unless the resulting prejudice cannot be cured); *Comuso v. National Railroad Passenger Corp.,* 1998 WL 800342 *2 (E.D.Pa. 1998) (holding that the importance of the excluded testimony is also an important final consideration in considering Rule 37(c) sanctions).

The need for the requested relief has been significantly altered by Sender's more recent decision to limit the number of investor and broker witnesses who will testify live or through deposition at trial. Obviously, there is no reason to "strike" witnesses who will never appear at trial. At present, the parties do not have a trial date and the Freeborn Defendants have expressed their intention to file dispositive motions under Fed. R.Civ.P. 56. The court concludes that the Freeborn Defendants should be permitted to conduct discovery depositions of the 15 investor and 5 broker witnesses who will testify at

trial. Had Sender made proper disclosures in a timely manner, the Freeborn Defendants would have been in a position to factor that information into their discovery plan, would have had that information available to their experts, and could have taken that information in account in preparing a motion for summary judgment. *Cf. Perkasie Industries Corp. v. Advance Transformer, Inc.*, 143 F.R.D. 73, 76–77 (E.D.Pa.1992) ("[a] party is not permitted to postpone identification of is own witnesses and the substance of their testimony until a critical point in the proceedings at which it will become extremely burdensome for his opponent to prepare effectively to meet them"). The depositions permitted under this Memorandum Order will place the Freeborn Defendants in the position they would have enjoyed if the Initial Disclosures had been provided. Recognizing the additional costs that inevitably result from inefficient discovery, I will also require, as an appropriate sanction for Sender's failure to comply with disclosure obligations under Rules 26(a)(1) and 26(e)(1), that Sender pay the fees and costs for one attorney representing the Freeborn Defendants to participate in those depositions, up to a maximum of $3,000 per deposition. The court concludes that no other sanction is appropriate or necessary to achieve the objectives underlying Rules 26 and 37.[6]

---

6. In their Reply Brief, the Freeborn Defendants indicate they still wish to strike Sender's trial exhibits 269 and 451. That portion of Defendants' motion is denied. As to Sender's exhibit 269, which is described as a letter relating to investor Russell Crosson, the Freeborn Defendants will have an opportunity to depose Mr. Crosson if he is included among the 15 designated investors. If he is not included as a trial witness, then exhibit 269 may well become irrelevant. As to Sender's exhibit 451, which is described as "telephone records for Richard Franzen," the court notes that Mr. Franzen no longer appears on Sender's list of "will call" or "may call" witnesses. Given that omission, the court will deny the motion to strike Sender's exhibit 451, but will certainly give Defendants leave to challenge the admissibility of that exhibit at trial, should it be offered.