2017 UT App 91

## THE UTAH COURT OF APPEALS

JACOB D. WILLIAMS,
Appellant,
*v.*
CRAIG ALAN ANDERSON, QUINN ZITE,
AND ANDERSON ZITE LLC,
Appellees.

Opinion
No. 20150886-CA
Filed June 2, 2017

Third District Court, Salt Lake Department
The Honorable Robert P. Faust
No. 130901891

Melinda A. Morgan and Richard F. Ensor, Attorneys
for Appellant

Daniel K. Brough and Eric B. Vogeler, Attorneys
for Appellees

JUDGE JILL M. POHLMAN authored this Opinion, in which JUDGES
J. FREDERIC VOROS JR. and MICHELE M. CHRISTIANSEN concurred.

POHLMAN, Judge:

¶1     In this interlocutory appeal, plaintiff Jacob D. Williams appeals the district court's grant of a motion in limine preventing him from presenting damages-related evidence at trial. Challenging the basis for the court's ruling, Williams contends that he adequately disclosed "a computation of any damages claimed" for purposes of rule 26 of the Utah Rules of Civil Procedure when he disclosed that he sought damages amounting to 30% of the purchase price of the company that he once co-owned with Craig Alan Anderson and Quinn Zite. We agree and therefore reverse and remand.

BACKGROUND

¶2    Williams filed a complaint against Anderson, Zite, and Anderson Zite LLC (collectively, Defendants), alleging that he and Anderson founded Fix A Phone LLC, a company that repaired cell phones and consumer electronics and sold electronic accessories.[1] According to Williams, Zite subsequently became a partner in Fix A Phone, resulting in Williams having a 30% ownership interest in the company. Williams alleged, among other things, that Anderson and Zite unjustly cancelled or terminated his ownership interest and thereafter sold the company to Tricked Out Services Inc.

¶3    In his complaint, Williams sought declaratory relief and alleged claims for breach of fiduciary duty, civil conspiracy, and fraud. In connection with his claims, Williams sought to recover 30% of the purchase price that Tricked Out Services paid for Fix A Phone. He also sought a ruling declaring that he was "a thirty percent (30%) owner of any equity or ownership interest that [Anderson and Zite] possess[] in Tricked Out Services, . . . or in any money owed by Tricked Out Services" to Anderson or Zite, as well as punitive and other damages. Williams did not allege the amount of Fix A Phone's purchase price, but he alleged that approximately seven months before his ownership interest in Fix A Phone was cancelled, his interest was worth between $77,000 and $119,000. He also alleged that a few months later, Fix A Phone was valued at approximately $1.5 million. Williams

---

1. Williams's complaint suggests that Anderson and Zite renamed the company to Anderson Zite LLC. For simplicity, we refer to the company as Fix A Phone throughout this opinion.

identified his case as a "Tier Three Case" under Utah Rule of Civil Procedure 26.[2]

¶4    In response, Defendants answered and asserted counterclaims, seeking damages in an amount to be proven at trial, and alleging that Fix A Phone had sold "substantially all of [its] assets for a base purchase price of $200,000." Defendants also alleged, "This is a Tier 3 case for purposes of discovery."

¶5    At the outset of discovery, Williams provided initial disclosures in which he claimed "entitle[ment] to 30% of the price Tricked Out Services, Inc., paid for Fix A Phone, LLC, as well as 30% of any equity or ownership interest Defendants may have in Tricked Out Services, Inc., including any money owed by Tricked Out Services, Inc., and punitive damages." Later, Williams received the purchase agreement between Fix A Phone and Tricked Out Services, which provides that the "aggregate purchase price to be paid by [Tricked Out Services] to [Fix A Phone] for the Acquired Assets and for the other covenants and agreements of [Fix A Phone] shall be $200,000.00 (the 'Purchase Price')." The agreement also states that "[i]n addition to the Purchase Price, and as consideration for [Anderson's and Zite's consulting] services . . . , [Tricked Out Services] further . . . agrees to pay to [Anderson and Zite] 50% of [its] Net Profits . . . derived from cell phone repair services" for two years.

¶6    Before depositions were taken, the parties exchanged emails regarding a potential mediation of the dispute. In one email, Defendants' counsel explained that because Defendants

_____

2. Under rule 26, each case falls into one of three tiers based upon the total amount of all damages claimed in the action. Utah R. Civ. P. 26(c)(5) & advisory committee notes. The rule sets limits on the standard fact discovery for each tier in proportion to the amount in controversy. *Id.* A case involving claims for damages of "$300,000 or more" falls into Tier 3. *Id.* R. 26(c)(5).

sold Fix A Phone for $200,000, "the most" Williams could recover was "30% of $200,000, or $60,000," even if he prevailed on all claims:

> Regarding mediation, my clients' position is that they sold the assets of the Fix-A-Phone business for $200,000, per the purchase agreement. Any further compensation they receive is in consideration for the services they are required to render per the contract. (In other words, if they don't consult, they don't get paid.) Therefore, the most Mr. Williams can recover, even if he succeeds on 100% of his claims, is 30% of $200,000, or $60,000. If Mr. Williams is willing to set that figure as a ceiling for the mediation, my clients would be willing to mediate . . . .

The parties mediated, but Williams did not agree to Defendants' suggested ceiling.

¶7 Afterward, Williams amended his initial disclosures. He maintained that he was entitled to 30% of Fix A Phone's purchase price and 30% of any equity or ownership interest that Defendants may have in Tricked Out Services, including punitive damages and "any money owed by Tricked Out Services." Williams also added that he was "entitled to 30% of any cash or other assets that remained at Fix A Phone after the asset sale" and to "Fix A Phone distributions from which he was excluded."

¶8 During a subsequent deposition, Williams testified that former employees of Fix A Phone told him that the company was valued at and sold for $1.5 million. He also stated that he ultimately learned that the company had not sold for that much:

Q: Did you ultimately learn or come to the conclusion that the company had not in fact sold for 1.5 million?

A: Yes.

Q: Okay. How did you come to that conclusion?

A: When we got the documents . . . .

Q: Okay. Do you know how much the company did sell for?

A: Two hundred, plus a percentage of the [company's] profit or revenue.

Q: If Mr. Anderson and Mr. Zite work as consultants; right?

A: I would need to check it.

Q: Okay. And your knowledge of this is just based on receiving the agreement in this litigation from Tricked Out?

A: Right.

¶9    Later, and shortly before the scheduled trial date, Defendants filed a motion in limine, seeking to prevent Williams "from presenting evidence on damages." Defendants asserted that Williams had failed to disclose a computation of his damages as required by rule 26(a)(1)(C) of the Utah Rules of Civil Procedure. Defendants argued that "[a]t most, Williams provided a formula for ascertaining his damages—apparently a 30% share of whatever profits Defendants earned or enjoyed as a result of their ownership in and sale of Fix A Phone." Defendants further argued that "such a formula, without more, cannot serve as a basis of damages." According to Defendants,

Williams's failure had "left [them] without any sense of the true proportionality of the case." They also contended that Williams's failure had affected the "manner in which they conducted discovery" and had harmed their ability to prepare for trial.

¶10 In opposition to the motion, Williams argued that his disclosure—that his damages equaled 30% of Fix A Phone's purchase price—satisfied his rule 26 obligation and asserted that Defendants had "not been prejudiced in any way." Defendants knew that the selling price of Fix A Phone was $200,000 and they could "multiply 30% by $200,000." As a result, Williams argued, Defendants knew he claimed "$60,000 for the sale of his interest in Fix A Phone." Williams also conceded that because "Defendants have testified that they received no ownership interest in Tricked Out Services . . . and there were no assets or cash kept in Fix A Phone, LLC after the sale," "there are no damages for these items" as long as Defendants' testimony remained consistent on this point.

¶11 At a hearing on Defendants' motion, the parties provided the district court with additional details regarding discovery. For example, Williams represented that altogether, the parties took three depositions, "[p]robably about five hours on each side," and exchanged "a couple sets of discovery." Defendants acknowledged "the notion that discovery ha[d] been minimal, at least in writing and in depositions," and noted that they had retained an expert who provided a written report on a liability issue. In addition, the parties addressed the fact that within days of the hearing, Defendants disclosed to Williams that they had received some funds pursuant to the purchase agreement after discovery closed. Williams acknowledged that he probably would not be entitled to the recently disclosed funds if they were received for Anderson's and Zite's consulting hours.

¶12 The district court granted Defendants' motion in limine. The court concluded that a "claim of a fixed percentage for damages does not comply with the requirement to disclose a

calculation of . . . damages . . . under Rule 26." The court further concluded that "the record indicates that Williams has not in fact agreed with Defendants that Fix-A-Phone sold for $200,000 and has contended that the purchase price includes the 50% net profit calculation described in Section 2.02 of the Asset Purchase Agreement." Accordingly, the court ordered that Williams would be prevented from "opining on or otherwise presenting damages-related evidence" at trial. In doing so, the court acknowledged Defendants' assertion that "they defended this lawsuit as if it were a $450,000 case," and Williams's assertion that Defendants always understood the extent of the damages Williams sought because they knew the purchase price for Fix A Phone. Williams filed a petition for interlocutory review, which we granted.

ISSUE AND STANDARD OF REVIEW

¶13   Williams contends the district court erred in determining that he did not disclose "a computation of any damages claimed" for purposes of rule 26 of the Utah Rules of Civil Procedure and erred in preventing him from presenting damages-related evidence at trial. While we afford trial courts broad discretion in discovery matters, *Dahl v. Dahl*, 2015 UT 79, ¶ 63, we review the interpretation of the Utah Rules of Civil Procedure for correctness, *Pete v. Youngblood*, 2006 UT App 303, ¶ 7, 141 P.3d 629. We will not find an abuse of discretion "absent an erroneous conclusion of law or where there is no evidentiary basis for the trial court's ruling." *Askew v. Hardman*, 918 P.2d 469, 472 (Utah 1996).

ANALYSIS

¶14   Williams contends that his disclosures complied with Utah Rule of Civil Procedure 26 because his "disclosures plainly articulated the nature of his damage (being excluded from the

[company's] sale) as well as the extent of his damage (thirty-percent of the Fix A Phone sale price)." But according to Defendants, Williams did not provide a computation of his claimed damages because, even though he "provided an algebraic formulation . . . that he was entitled to '30% of $x$,'" Williams "staunchly refused to ever define $x$," leaving Defendants in the dark about what damages Williams sought. Williams responds that the variable $x$—"[t]he price Tricked Out [Services] paid for Fix A Phone"—was "undisputed and well-known to Defendants," and that "there is no undisclosed 'witness, document, or material' as Defendants were in possession of the actual price paid for Fix-A-Phone's assets at all times."

¶15　Rule 26 governs the disclosures to be made during the course of discovery. Subsection (a) requires a party, "without waiting for a discovery request," to serve initial disclosures on the other parties. Utah R. Civ. P. 26(a)(1).[3] A party's initial disclosures must contain, among other things, "a computation of any damages claimed and a copy of all discoverable documents or evidentiary material on which such computation is based, including materials about the nature and extent of injuries suffered." *Id.* R. 26(a)(1)(C). To comply with this requirement, "[p]arties should make a good faith attempt to compute damages to the extent it is possible to do so and must in any event provide all discoverable information on the subject, including materials related to the nature and extent of the damages." *Id.* R. 26 advisory committee notes. Rule 26 requires disclosures and responses to discovery to be "based on the information then known or reasonably available to the party." *Id.* R. 26(d)(1). Parties also have a continuing obligation to supplement disclosures with "additional or correct information"

---

3. The Utah Rules of Civil Procedure have been amended since this case was filed in March 2013. Because these alterations do not affect our analysis, we cite the rules in their current form.

if they "learn[] that a disclosure or response is incomplete or incorrect in some important way" and "if [the additional or correct information] has not been made known to the other parties." *Id.* R. 26(d)(5).

¶16    Rule 26 explains the consequences of a failure to disclose. "If a party fails to disclose or to supplement timely a disclosure or response to discovery, that party may not use the undisclosed witness, document or material at any hearing or trial unless the failure is harmless or the party shows good cause for the failure." *Id.* R. 26(d)(4). "Not being able to use evidence that a party fails properly to disclose provides a powerful incentive to make complete disclosures." *Id.* R. 26 advisory committee notes.

¶17    In this case, the parties dispute whether Williams's disclosure—that he was entitled to 30% of the price Tricked Out Services paid for Fix A Phone—met the requirement for a "computation of any damages claimed."[4] In Williams's view, rule 26 contemplates the disclosure of "the 'act or process' or the 'calculation' or the 'system or reckoning' by which the damages claimed were identified." Defendants, in contrast, assert that "a plaintiff must disclose a computation, which, by definition, is a definite, concrete number."

¶18    This court has recently explained that "[e]ven if a plaintiff cannot complete its computation of damages before future events take place, 'the fact of damages . . . and the method for calculating the amount of damages' must be apparent in initial disclosures." *Sleepy Holdings LLC v. Mountain West Title*, 2016 UT

---

4. Notably, on appeal, Williams limits his argument to his claim to 30% of Fix A Phone's purchase price. He does not contend that he should be allowed to pursue a portion of any proceeds related to revenue sharing payments under the purchase agreement, nor does he seek a portion of any cash or other assets that he once believed remained with Fix A Phone after the sale.

App 62, ¶ 14, 370 P.3d 963 (omission in original) (quoting *Stevens-Henager College v. Eagle Gate College*, 2011 UT App 37, ¶ 22, 248 P.3d 1025). To illustrate, in *Sleepy Holdings*, the plaintiff relied on its initial disclosure that its damages stemmed from a failed $2 million real estate sale as described in the complaint. *Id.* ¶¶ 3, 15. This court explained that because the complaint "[did] not identify the failed sale as damages," and because the "contract price represents only one element of the damages calculation" in a failed property sale, the plaintiff's description of the $2 million sale did not "offer a computation or method of calculating the damages as required by law." *Id.* ¶¶ 16–17. Thus, the plaintiff "failed to satisfy the requirements of rule 26." *Id.* ¶ 17.[5]

¶19   Here, we must likewise determine whether Williams adequately disclosed the fact of damages and the method for calculating those damages. After alleging in his complaint that Defendants sold Fix A Phone after they invalidated his 30% ownership interest in the company, Williams's initial disclosures articulated that he claimed "entitle[ment] to 30% of the price Tricked Out Services, Inc., paid for Fix A Phone." In contrast to the disclosure of a contractual sale price in *Sleepy Holdings*, untethered to any specific claim of damages, a damages theory, or method of calculation, Williams's disclosure described the precise components he intended to factor into his damages claim. The description disclosed both the fact of damages and the method by which those damages would be calculated. And while Williams did not know the purchase price was $200,000 when he served his initial disclosures, Defendants knew how much Fix A Phone had sold for and could readily calculate this component of Williams's damages as 30% of $200,000, or $60,000. Thus, Williams's disclosure explaining the process for

---

5. Although *Sleepy Holdings* applies an earlier version of the discovery rules, the relevant disclosure requirement has not changed.

calculating his claimed portion of Fix A Phone's purchase price satisfied his obligation under rule 26(a)(1)(C) to produce a "computation of any damages claimed"—at least with regard to that component of his damages claim.

¶20    The district court arrived at the opposite conclusion in large part because Williams's disclosures and complaint referenced claims to damages in addition to 30% of the $200,000 sale price. Its decision turned on its understanding that Williams did not agree with Defendants that Fix A Phone sold for $200,000. According to the district court, Williams "contended that the purchase price includes the 50% net profit calculation described in section 2.02 of the Asset Purchase Agreement." In support, the court cited Williams's amended disclosures and his deposition testimony. Williams's amended disclosure stated:

> Williams is entitled to 30% of the price Tricked Out Services, Inc., paid for Fix A Phone, LLC, as well as 30% of any equity or ownership interest Defendants may have in Tricked Out Services, Inc., including any money owed by Tricked Out Services, Inc., and punitive damages. [Williams] is also entitled to 30% of any cash or other assets that remained at Fix A Phone after the asset sale. [Williams] is also entitled to Fix A Phone distributions from which he was excluded.

During Williams's deposition, he testified that he learned after receiving the purchase agreement during discovery that the company sold for "[t]wo hundred [thousand], *plus* a percentage of the [company's] profit or revenue." (Emphasis added.)

¶21    Defendants endorse the district court's reasoning. But Williams's references to other funds was a claim to damages *in addition to* his claim to 30% of the price paid for Fix A Phone. In both versions of his initial disclosures, Williams stated his belief that he was entitled to 30% of the price Tricked Out Services

paid for Fix A Phone, *as well as* other assets, distributions, or ownership interests. However vague the claims to other funds may have been, Williams's disclosure of his claim to 30% of Fix A Phone's purchase price was consistent and straightforward. Even during his deposition, Williams conceded that Fix A Phone had sold for $200,000. While Williams asserted that he might also be entitled to some share of the company's profit or revenue, Defendants' follow-up questions demonstrated that they understood Williams was referring to section 2.02 of the purchase agreement, which states: "In addition to the Purchase Price, and as consideration for [Anderson's and Zite's consulting] services to be rendered pursuant to Section 2.02(c) below, [Tricked Out Services] further . . . agrees to pay to [Anderson and Zite] 50% of [its] Net Profits . . . derived from cell phone repair services" for two years.[6] The fact that Williams, at one time, believed he may have been entitled to some share of that additional consideration does not undermine the fact that he consistently disclosed his claim to 30% of a fixed purchase price.

¶22    Williams's description of his "entitle[ment] to 30% of the price Tricked Out Services, Inc., paid for Fix A Phone" thus gave adequate notice to Defendants of that portion of his damages claim and the method for calculating those damages. Under these circumstances, the district court erred in determining that Williams's "claim of a fixed percentage for damages [did] not comply" with rule 26's requirement to disclose a computation of damages claimed.

---

6. Although Defendants apparently received some funds pursuant to this section of the purchase agreement, Williams admitted that he would not be entitled to the belatedly disclosed funds if they were "truly" paid for Anderson's and Zite's consulting hours. Moreover, Williams does not pursue an argument on appeal that he is entitled to those funds. *See supra* ¶ 17 n.4.

¶23    Defendants nevertheless rely on federal cases in support of their claim that "formulas in lieu of concrete computations" do not meet a party's duty to disclose damages. Defendants' reliance on these cases is misplaced.

¶24    First, Defendants direct us to *Design Strategy, Inc. v. Davis*, 469 F.3d 284 (2d Cir. 2006), in which the United States Court of Appeals for the Second Circuit affirmed a district court's determination that the plaintiff had failed to comply with its obligation to disclose its damages for lost profits under rule 26(a) of the Federal Rules of Civil Procedure. *Id.* at 295–96. Defendants cite the *Design Strategy* court's statement that the plaintiff's "'simple arithmetic' calculation [was] wholly inadequate as a measure of damages." *Id.* at 295. But the context of this statement matters.

¶25    The court first concluded that the plaintiff failed to disclose a claim for damages related to lost profits because "nowhere did [the plaintiff] ever disclose 'lost profits' as even a 'category' of 'damages' sought" in its initial disclosures. *Id.* The court then rejected the plaintiff's contention that its disclosure of its financial statements was sufficient, explaining, "Rule 26(a) requires more than providing—without any explanation— undifferentiated financial statements; it requires a 'computation,' supported by documents." *Id.* Further, the plaintiff's assertion that the defendants could calculate lost profits using "simple arithmetic" by using the plaintiff's financial statements was "wholly inadequate as a measure of damages" because the facts did not lend themselves to a simple calculation. *See id.* Thus, *Design Strategy* is distinguishable both because the plaintiff there failed to disclose the category of damages sought and because the plaintiff's damages were not readily calculable from the information disclosed. *See id.* The decision in *Design Strategy* does not support a blanket rule that "formulas in lieu of concrete computations" are always insufficient to meet a party's disclosure requirements.

¶26 Defendants also cite *City & County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219 (N.D. Cal. 2003). Defendants quote the language of that case stating that "the 'computation' of damages required by [Federal Rule of Civil Procedure 26] contemplates some analysis." *Id.* at 221. The court further explained,

> [F]or instance, in a claim for lost wages, there should be some information relating to hours worked and pay rate. On the other hand, disclosing a precise figure for damages without a method of calculation may be sufficient in cases where other evidence is developed *e.g.* in the context of a preliminary hearing, and it is appropriate to defer further specification to *e.g.* development of expert testimony.

*Id.* (citations omitted). The court's discussion suggests that the adequacy of an initial disclosure depends on the circumstances of the case and the nature of the damages claimed. *See id.* As a result, *Tutor-Saliba* does not support the notion that formulas disclosed as a computation of damages are insufficient per se. Rather, a disclosure satisfies rule 26 if it provides sufficient detail to inform a defendant about the fact and amount of the plaintiff's damages. Here, Defendants were aware that Williams claimed 30% of Fix A Phone's purchase price and that the company sold for $200,000. In addition, as Williams points out, "there is no undisclosed 'witness, document, or material' as Defendants were in possession of the actual price paid for Fix-A-Phone's assets at all times." While there may have been ambiguity about what additional damages Williams sought, Defendants understood their potential exposure relative to that component of Williams's damages claim.

¶27 Defendants also rely on *Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*, No. 10-CV-419-GPC(WVG), 2013 WL 4716210 (S.D. Cal. Sept. 3, 2013). There, the plaintiff disclosed its damage

theory and the evidence underlying the damages calculation but failed to disclose the "computation" of damages sought. *Id.* at *2–3. The district court found the disclosure was insufficient because the plaintiff "did not [timely] present the method or formula for calculating actual damages." *Id.* at *3. Given that the court's decision in that case turned on the plaintiff's failure to disclose a "method or formula for calculating actual damages," which Williams provided in this case, *Brighton Collectibles* is not supportive of Defendants' position. *See id.*

¶28 Finally, Defendants argue that the district court's exclusion of Williams's damages evidence was proper because Williams's failure to disclose lacked good cause and was not harmless. *See* Utah R. Civ. P. 26(d)(4) (providing that a party may not use an "undisclosed witness, document or material . . . unless the failure is harmless or the party shows good cause for the failure"). In so arguing, Defendants emphasize that they would have handled the case differently if Williams had expressly quantified his damages as $60,000. Because we conclude that Williams's disclosures in connection with his claim to a share of Fix A Phone's purchase price did not constitute a failure to disclose, we need not reach the question of good cause or harmlessness.

CONCLUSION

¶29 The district court erred in concluding that Williams's disclosure that he was entitled to 30% of the company's purchase price failed to satisfy his duty to disclose under rule 26(a)(1)(C) of the Utah Rules of Civil Procedure. We therefore reverse the district court's grant of Defendants' motion in limine to the extent it relates to a claim for 30% of the Fix A Phone $200,000 purchase price. We remand this case for further proceedings consistent with this decision.

———————