*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2019 UT 20**

IN THE

**SUPREME COURT OF THE STATE OF UTAH**

KEYSTONE INSURANCE AGENCY, LLC,
*Appellant,*

*v.*

INSIDE INSURANCE, LLC, SHUMWAY INSURANCE GROUP, INC.,
JONATHAN SHUMWAY, SPENCER SHUMWAY, and CABE ATKINSON,
*Appellees.*

No. 20170677
Filed May 29, 2019

On Direct Appeal

Fourth District, Utah County
The Honorable Christine S. Johnson
No. 150400767

Attorneys:

Aaron P. Dodd, Provo, for appellants

Barry N. Johnson, Daniel K. Brough, Salt Lake City, for appellees

JUSTICE HIMONAS authored the opinion of the Court in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE PEARCE, and JUSTICE PETERSEN joined.

JUSTICE HIMONAS, opinion of the Court:

## INTRODUCTION

¶1 Keystone Insurance Agency appeals the district court's decision to exclude all evidence of its alleged damages, pursuant to Utah Rule of Civil Procedure 26(d)(4), in its suit against Inside Insurance. Additionally, Keystone appeals the district court's denial of its motion for reconsideration. Lastly, Keystone appeals the district court's dismissal with prejudice of Inside's counterclaim seeking expulsion of Keystone as a member of Inside.

¶2 Because Keystone failed to provide Inside with a viable computation of its claimed damages in compliance with Utah Rule of

Civil Procedure 26(a)(1)(C), we affirm the district court's exclusion of Keystone's damages evidence under rule 26(d)(4). We also affirm the district court's denial of Keystone's motion for reconsideration after finding that the facts of this case are readily distinguishable from those of *Williams v. Anderson*, 2017 UT App 91, 400 P.3d 1071. Lastly, we hold that the district court did not abuse its discretion by dismissing Inside's expulsion counterclaim with prejudice pursuant to Utah Rule of Civil Procedure 41(a)(2) and (c).

**BACKGROUND**

¶3    On May 23, 2012, Shumway Insurance Group, Inc. (SIG) and Keystone entered into an operating partnership agreement. SIG was owned and controlled by Scott Shumway and Keystone was owned and controlled by Chad Johansson. Pursuant to the agreement, SIG and Keystone became members of Inside, with SIG owning seventy-five percent of Inside and Keystone owning twenty-five percent. Additionally, the agreement provided that Keystone would receive a 90/10 commission split on all new and renewal business written by or brought over by Keystone's principal, Johansson. Keystone would also receive a fifty percent commission from the initial fee for any satellite office brought on by Keystone. Nearly three years later, a disagreement relating to commission splits led to the termination of Johansson as an agent and sales representative of Inside. Keystone, however, remained a member of Inside despite the ousting of its principal from Inside. Following Johansson's departure, Keystone issued a demand letter to Inside, requesting access to review and copy Inside's organizational documents, income tax returns, and financial records. Following Inside's refusal to meet Keystone's demands to be treated as a member of Inside, access Inside's financial records, or be paid under the operating agreement, Keystone filed its complaint in the district court on May 27, 2015.

¶4    In the complaint, Keystone requested that the district court declare Keystone a member of Inside and order SIG to buy out Keystone's membership interest in Inside at its fair market value. Keystone also brought a number of other claims against Inside, alleging breach of contract, gross negligence, and breach of fiduciary duty. Keystone pled that it had sustained damages in an amount not less than $300,000. On May 28, 2015, Keystone filed a motion for a temporary restraining order and a preliminary injunction relating to Inside's refusal to make certain documents and materials available to Johansson. The district court did not enter the injunction, but instead ordered that Inside furnish Johansson access to his company laptop

or give him a copy of the hard drive so that he could obtain information regarding his customer contacts. On June 19, 2015, Inside provided Johansson a copy of the hard drive. Inside did not furnish Keystone with its financial information.

¶5   On June 22, 2015, the district court issued a Notice of Event Due Dates. It set February 29, 2016, as the deadline for completing fact discovery and July 4, 2016, as the deadline for completing expert discovery. Keystone served its initial disclosures on July 6, 2015. Keystone did not set forth a damages computation in its initial disclosures.[1] In response, Inside sent Keystone a letter on August 3, 2015, requesting that Keystone disclose a computation of its damages pursuant to rule 26(a)(1)(C).[2] Following an amendment to Keystone's disclosures, which still did not include a computation of damages, Inside again requested a computation of damages from Keystone on September 22, 2015. On October 14, 2015, Keystone responded to Inside's request for a computation of damages by explaining that it was working to determine the fair market value of its interest in Inside as of the date of Johansson's termination. Additionally, Keystone said that it was "in the process of obtaining some expert assistance" to assist in this determination. Keystone further explained that it was unable to state what amounts it was owed because Keystone did not have access to the information necessary to calculate the commissions entitled to Johansson. Keystone stated that once it received that information from Inside "either voluntarily . . . or through discovery," it would provide its damages computation.

¶6   On January 27, 2016, the parties agreed to extend fact discovery until March 31, 2016. Relevant to the third issue on appeal, on December 4, 2015, Inside asserted several counterclaims and third-party claims against Keystone and Johansson. Inside asserted claims for tortious interference with contractual relations, requested an injunction prohibiting Keystone from interfering with Inside's

---

[1] Keystone included only the following paragraph related to damages in its initial disclosures: "1. Defendant claims damages for past and future pecuniary losses resulting from Defendants [*sic*] unlawful actions. 2. Attorneys' fees and costs which have been and will be incurred in this matter. 3. Compensatory damages, which have yet to be calculated."

[2] Inside's letter to Keystone states: "Keystone discloses no computation, but simply three extremely general categories that Keystone evidently believes constitute its damages."

business, and sought the expulsion of Keystone from Inside. On March 2, 2016, Keystone served its first set of discovery requests, formally requesting production of all of Inside's financial records and QuickBooks records. On March 3, 2016, Inside amended and supplemented its initial disclosures to produce documents relevant to its counterclaims and third-party claims. Among those documents was a 197-page spreadsheet that tracked the commissions related to Inside clients previously associated with Keystone and Johansson from April 20, 2015, to the date of production. Inside further produced a document summarizing the 197-page spreadsheet. This summary document showed that, according to Inside's records, Keystone's total commissions from its new and renewal business between April 23, 2015, and February 19, 2016, was $74,796.14, meaning that Keystone's ninety percent commission split was valued at $67,316.53.

¶7    The parties ultimately agreed to extend fact discovery to May 26, 2016, and to extend expert disclosures to June 15, 2016. Keystone served a final supplement to its initial disclosures on April 21, 2016, but that supplement still did not include a computation of damages. Keystone did not furnish a computation of damages in any disclosure or discovery response during fact discovery.[3] On June 15, 2016, the final day of expert disclosures, Keystone disclosed Jeremiah Grant as an expert witness. Grant, using two different technical models, valued Keystone's twenty-five percent interest in Inside to be between $133,228 and $330,718 or between $77,728 and $192,948, respectively. Grant also estimated that Keystone's unpaid ninety percent commission split from May 2015 through March 2016 was $67,177.25 and that Keystone was owed $3,561 for unpaid pre-termination commissions and $34,908.95 for unpaid overrides.

¶8    On July 15, 2016, Inside, claiming that Keystone had failed to disclose a computation of damages during discovery, filed a motion in limine seeking exclusion of all of Keystone's damages-related evidence pursuant to rule 26(d)(4). On November 15, 2016, the district court granted Inside's motion and excluded all of Keystone's damages-related evidence. The ruling also granted Inside's motion for partial summary judgment as to all of Keystone's

---

[3] By April 22, 2016, Inside had responded to Keystone's discovery requests and disclosed all relevant documents and computer files. By May 2, 2016, Keystone had received access to Inside's QuickBooks files.

claims with the exception of Keystone's request for declaratory relief to confirm its membership in Inside and its statutory rights to records inspections. Keystone then filed a Rule 54(b) Motion to Change Ruling and Order on December 13, 2016, which the district court denied.

¶9   On July 21, 2017, Keystone filed a Motion to Reconsider Ruling and Order Due to New Caselaw. In that motion Keystone contended that the spreadsheet disclosed by Inside constituted notice, to Inside, of the damages Keystone was seeking—at least as to the unpaid commissions Keystone sought as damages. Keystone argued that a recent court of appeals decision, *Williams v. Anderson*, 2017 UT App 91, 400 P.3d 1071, constituted new authority that required the district court to reverse its earlier ruling excluding Keystone's damages evidence. The district court denied that motion in an order entered August 15, 2017.

¶10 Previously on July 14, 2017, in light of the exclusion of Keystone's evidence of damages, Inside filed a motion to dismiss its own counterclaims, including its claim to expel Keystone as a member of Inside. The district court dismissed those counterclaims with prejudice on August 15, 2017. The parties subsequently stipulated to dismiss Keystone's remaining claims. The district court dismissed those claims on August 22, 2017. This appeal followed.

¶11 We exercise jurisdiction under Utah Code section 78A-3-102(3)(j).

**STANDARD OF REVIEW**

¶12   We review a district court's interpretation of our rules of civil procedure, precedent, and common law for correctness. *Holmes v. Cannon*, 2016 UT 42, ¶ 6, 387 P.3d 971; *Ellis v. Estate of Ellis*, 2007 UT 77, ¶ 6, 169 P.3d 441. We review a district court's decision on sanctions under rule 26(d)(4) and to reconsider an issue prior to any appeal for an abuse of discretion. *See, e.g.*, *IHC Health Servs., Inc. v. D & K Mgmt., Inc.*, 2008 UT 73, ¶ 27, 196 P.3d 588. We likewise review a district court's decision to dismiss a counterclaim under rule 41(a)(2) and (c) with or without prejudice for an abuse of discretion. *Nu-Med USA, Inc. v 4Life Research, L.C.*, 2008 UT 50, ¶ 8, 190 P.3d 1264.

**ANALYSIS**

¶13   The issues in this case are procedural. Rule 26(a)(1)(C) and rule 26(d)(4) set forth clearly defined directions for the discovery process. It is undisputed that Keystone never presented a computation of damages during the fact discovery period and waited until the close of expert discovery to present, for the first

time, its damage estimates and methodologies. The district court thoughtfully and faithfully applied the rules and found this failure by Keystone not to be harmless to Inside or excused for good cause. No new case law contradicts this ruling or alters the paradigm of how district courts should apply the rules of civil procedure.

¶14 Finding no relief from or error in the district court's application of the rules, Keystone challenges Inside's request for dismissal of Inside's counterclaim to expel Keystone. But throughout the litigation Keystone consistently opposed Inside's motion for expulsion and suffered no prejudice in the dismissal of the counterclaim. Keystone remains a member of Inside—the very outcome it sought for the overwhelming majority of this case.

¶15 We find no error or abuse of discretion by the district court on any of the issues on appeal and affirm on all counts.

## I. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY GRANTING INSIDE'S MOTION TO EXCLUDE

¶16 A plaintiff must include a damages computation in its initial disclosures. UTAH R. CIV. P. 26(a)(1)(C). Rule 26(a)(1) requires the plaintiff to serve on the other parties "without waiting for a discovery request . . . a computation of any damages claimed and a copy of all discoverable documents or evidentiary material on which such computation is based." Rule 26 also provides further elaboration on the duties it assigns. Rule 26(d)(3) states clearly that a "party is not excused from making disclosures or responses because the party has not completed investigating the case or because the party challenges the sufficiency of another party's disclosures or responses or because another party has not made disclosures or responses." UTAH R. CIV. P. 26(d)(3). Throughout the entirety of fact discovery Keystone failed to disclose to Inside any computation of the damages it was seeking, despite having a clear duty to do so.[4]

---

[4] Although we attach no decisional authority to advisory committee reports, the commentary on rule 26 is illustrative of the defect in Keystone's actions. The advisory committee notes on rule 26 state:

> "The penalty for failing to make timely disclosures is that the evidence may not be used in the party's case-in-chief. To make the disclosure requirement meaningful, and to discourage sandbagging, parties must know that if they fail to disclose important

(continued . . .)

¶17 Regardless of what Keystone knew or did not know about its damages, it was still incumbent on Keystone to disclose what it had and, more crucially, its method and computation for damages. As the district court noted, citing the court of appeals, "[e]ven if a plaintiff cannot complete its computation of damages before future events take place, 'the fact of damages . . . and the *method for calculating the amount of damages*' must be apparent in initial disclosures." *Sleepy Holdings LLC v. Mtn. W. Title*, 2016 UT App 62, ¶ 14, 370 P.3d 963 (quoting *Stevens-Henager Coll. v. Eagle Gate Coll.*, 2011 UT App 23, ¶ 22, 248 P.3d 1025) (emphasis added) (alteration in original).[5] Keystone's failure to provide any such computation or method for calculating damages is undisputed by the parties and ultimately led the district court to consider and apply the sanction provided by rule 26(d)(4).

¶18 Rule 26(d)(4) states that "[i]f a party fails to disclose or to supplement timely a disclosure or response to discovery, that party may not use the undisclosed witness, document or material at any hearing or trial unless the failure is harmless or the party shows good cause for the failure." UTAH R. CIV. P. 26(d)(4). Unfortunately, Keystone did not disclose its damages or any computation until the end of expert disclosures—nearly one year after filing its initial disclosures. This left Inside to guess at what damages Keystone was seeking and how they were to be calculated. As the district court noted, "[f]or a defendant, disclosing one's case-in-chief hinges to a large extent upon the disclosures provided by the plaintiff . . . a defendant must understand the claims brought by the plaintiff in order to prepare a case-in-chief." The need for the plaintiff to first furnish its disclosures, computations, and theory of the case is by

---

information that is helpful to their case, they will not be able to use that information at trial. The courts will be expected to enforce them unless the failure is harmless or the party shows good cause for the failure."

UTAH R. CIV. P. 26 advisory committee's note. Again, acknowledging that we are not bound by these commentaries, the district court wisely stated that "sanctions for failure to disclose are required unless that failure is either harmless of justified by good cause."

[5] Of course, Keystone could always supplement its damages disclosure later on as more information was acquired through discovery.

design of the Rules.[6] Keystone's neglect is only pardonable if found to be "harmless" or for "good cause." UTAH R. CIV. P. 26(d)(4). But the district court did not abuse its discretion in finding that neither exception applied to Keystone's failure.[7]

¶19 Keystone's failure to offer its theory of damages or any salient computation was found to be not harmless by the district court, which stated that "there is clearly harm when a plaintiff engages in this type of conduct and waits until the twilight hours of fact discovery to engage in any meaningful discovery, indeed, in any discovery at all, and then to provide the calculation in the expert report for the first time." Additionally, the district court exercised care in fleshing out the harm done to Inside during oral argument on Inside's motion to exclude when it asked Inside, "was there truly harm if you were able to get an expert report pulled together for your own counterclaim that ended up being responsive to their expert report, then was there really harm?" Inside responded with several reasons that the court, in its discretion, found persuasive of harm. These included an inability to adequately question Johansson, uncorrected disparities between the parties' valuations, and the uncertainty as to which Tier status—with its accompanying discovery rules and limitations—would even govern the case.[8]

---

[6] The plaintiff's burden is not simultaneous with the defendant's but comes first and early: "a party shall, *without waiting for a discovery request*, serve on the other parties . . . a copy of all documents, data compilations, electronically stored information, and tangible things in the possession or control of the party that the party may offer in its case-in-chief." UTAH R. CIV. P. 26(a)(1) (emphasis added).

[7] Under a plain language reading of rule 26(d)(4), the burden to demonstrate harmlessness or good cause is clearly on the party seeking relief from disclosure requirements, in this case Keystone.

[8] This problem was summarized by counsel for Inside:

> And when you have a plaintiff that doesn't ever really engage early on with the fact or the number of discovery, which the comments to rule 26 require the plaintiff to do, that harms defendants as well. They're getting dragged through this by the plaintiff's request. And they're entitled to know what this case is about so that they can make decisions regarding how long it's going to last, how much discovery are we going to have to go through, and what are we going to have to

(continued . . .)

¶20 In short, any ability on the part of Inside to guess at potential damages does not free Keystone from its obligation to disclose a computation of damages. Keystone's failure impaired Inside's ability to understand the nature and quantity of the damages Keystone claimed, as well as the length, anticipated costs, and scope of the litigation being pursued. The general categories provided in Keystone's initial disclosures were not enough for Inside to properly build a defense against the damages claimed. The district court was therefore well within its discretion to find that Keystone failed to meet its burden to establish that its failure was harmless to Inside.[9]

¶21 Additionally, the district court did not abuse its discretion in finding that Keystone also failed to meet its burden to establish good cause for its neglect. Inside repeatedly notified Keystone of its failure to provide a damages computation through written correspondence and multiple requests during the discovery period. Keystone was notified both on August 3, 2015, and again on September 22, 2015, of the deficiency in its initial disclosures. Despite a later extension of fact discovery until March 31, 2016, Keystone did not conduct any discovery until March 2, 2016. Further discovery extensions allowed Keystone time to amend its disclosures with the full cohort of requested financial information made available to it by Inside. Still it did not disclose a computation before the close of fact discovery on May 26, 2016. As the appellees point out, Keystone had the spreadsheet calculating Johansson's commissions nearly three months prior to the end of discovery, it had Johansson's hard drive for over seven months before the end of discovery, and it obtained possession of Inside's QuickBooks accounts just under a month

---

do to get to the end here? Because it's not free for them either. And I think that's a pretty acute distinction.

[9] Additionally, if Keystone truly felt that it could not provide its computation due to Inside's failure to disclose material information, a remedy existed in Utah Rule of Civil Procedure 37(a) which provides that "[a] party or the person from whom discovery is sought may request that the judge enter an order regarding any discovery issue, including: (a)(1)(A) failure to disclose under Rule 26 . . . (a)(1)(E) compelling discovery from a party who fails to make full and complete discovery." Keystone filed no such motion and even such a filing of a statement of discovery issues "does not suspend or toll the time to complete standard discovery." *Id.* 37(a)(9).

before the end of discovery. The district court was again within its discretion to find no good cause to excuse Keystone's failure to provide a computation of damages.

## II. THE DISTRICT COURT DID NOT ERR BY DENYING KEYSTONE'S MOTION TO RECONSIDER

¶22 The district court did not err in denying Keystone's Motion to Reconsider Ruling and Order Due to New Caselaw. Keystone argued in this motion that Inside's own spreadsheet regarding Johansson's commissions gave Inside notice as to Keystone's damages at least with respect to commissions owed, and that a recent court of appeals decision, *Williams v. Anderson*, 2017 UT App 91, 400 P.3d 1071, necessitated a reversal of the district court's ruling. In *Williams* the court of appeals found that a plaintiff's disclosure of damages—thirty percent of a company's purchase price—was a sufficient disclosure and satisfactory computation of damages. *Id.* ¶ 26. While we review the district court's legal conclusions, including its interpretation of *Williams*, de novo, it is clear that the district court did not err by distinguishing this case from the facts in *Williams*.

¶23 In *Williams*, the plaintiff's disclosures stated that he was seeking thirty percent of the purchase price of a recently acquired company. *Id.* ¶ 3. The defendants in turn disclosed an asset purchase agreement which listed the purchase price as $200,000. *Id.* ¶ 12. Both parties agreed that theirs was a Tier 3 case. *Id.* ¶ 4. Because the damages disclosure was an unambiguous and known value which "described the precise components [the plaintiff] intended to factor into his damages claim," *i.e.*, thirty percent of $200,000, the court of appeals found the disclosure to be a sufficient computation of damages. *Id.* ¶ 19. Here, however, the district court reasonably concluded that Keystone's claim for damages was more complex than the one at issue in *Williams*, and that Keystone's disclosure lacked any computation by simple calculation. Keystone's focus on Inside's possession of a spreadsheet detailing Johansson's commissions misunderstands the burden placed on the plaintiff by rule 26. The spreadsheet contained information regarding Johansson's business dealings. But the sheet was a mere tool that could aid in the calculation of damages—*not a dispositive and clear recitation of what damages Keystone was after*. Without a clear computation or theory of what Keystone was asking for, it was left to the guesswork of Inside to determine how the spreadsheet might

inform Keystone's theory of the case and what damages it was seeking.[10] The district court did not err in determining this to be an insufficient method of computing damages under the *Williams* framework.

## III. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN GRANTING INSIDE'S MOTION TO DISMISS

¶24 Finally, Keystone asserts that the district court abused its discretion by granting Inside's motion to dismiss its own counterclaim for expulsion. This is curious, at the very least, seeing as Keystone continuously took the position that it is, and should remain, a member of Inside—which is the real-world consequence of the dismissal of Inside's counterclaim.

¶25 Utah Rule of Civil Procedure 41(a)(2) states that "an action may be dismissed at the plaintiff's request by court order only on terms the court considers proper." This rule applies equally to the dismissal of a counterclaim. *Id.* 41(c). A Tenth Circuit opinion formally adopted by our court of appeals, and that we also find persuasive, defines what is meant by "proper" for purposes of dismissal: "absent 'legal prejudice' to the defendant, the district court normally should grant such a dismissal." *Ohlander v. Larson*, 114 F.3d 1531, 1537 (10th Cir. 1997) (adopted in *Rohan v. Boseman*, 2002 UT App 109, ¶¶ 21--22, 46 P.3d 753). In *Rohan*, the court of appeals articulated several factors meant to guide the court's determination as to whether a party would be legally prejudiced by the dismissal of such an action. *Id.* ¶ 28. These include "the opposing party's effort and expense in preparing for trial; excessive delay and lack of diligence on the part of the movant; insufficient explanation of the need for a dismissal; and the present stage of the litigation." *Id.* ¶ 21 (quoting *Ohlander*, 114 F. 3d at 1537) (internal quotation marks omitted). "The *Ohlander* factors are 'by no means exclusive' and '[a]ny other relevant factors should' also be considered." *H&H Network Servs., Inc. v. Unicity Int'l, Inc.*, 2014 UT App 73, ¶ 5, 323 P.3d 1025 (alteration in original) (citation omitted) (considering whether claimants were attempting to dismiss a claim merely to bring another suit or to circumvent earlier decisions). Keystone has failed

---

[10] This is different in kind from the straight forward equation used in *Williams*. For example, Keystone's own expert observed discrepancies between Johansson's hard drive and the QuickBooks information furnished by Inside. Possessing all of a company's financial data does not obligate defendants to divine what matters to a plaintiff.

to persuade us that it was legally prejudiced by the dismissal of Inside's counterclaim.

¶26 Throughout the dispute, Keystone, as defendant to the counterclaim, argued against expulsion. It loses no rights by the dismissal of Inside's claim, and the dismissal with prejudice bars Inside from filing another claim to expel Keystone.[11] As the district court noted, there is simply no "controversy that would even be tried." The district court, by dismissing Inside's counterclaim, gave Keystone the very remedy that it had originally sought. The *Rohan* factors are largely inapplicable in this case. Because Keystone continuously sought an order declaring it to be a member of Inside, Keystone's expenditure of time and money on this issue was inevitable. Even if Inside had not sought expulsion through a counterclaim, Keystone still would have been litigating the issue of whether it was a member of Inside. And, any delay by Inside was primarily the product of Keystone's neglect of its own claims. The district court was well within its discretion in not forcing Inside to litigate a claim it no longer wished to pursue merely so that Keystone could compensate for its failure to manage its own claims.[12] After spending years seeking an order that it is a member of Inside, Keystone now asks the court to: (1) expel it from Inside and (2) liquidate its membership interest so that it can be paid for its expulsion. The district court did not abuse its discretion by declining to do so. Keystone remains a member of Inside and was not prejudiced by the district court's dismissal of Inside's counterclaim.

## CONCLUSION

¶27 Although we review the district court's application of the rules of civil procedure and conclusions of law de novo, we grant significant deference to its findings of fact and review for abuse of discretion the import that it assigns to the factual details relevant to

---

[11] As the appellees point out, Black's Law Dictionary states that to demonstrate legal prejudice, the "defendant may show that dismissal will deprive the defendant of a substantive property right or preclude the defendant from raising a defense that will be unavailable or endangered in a second suit." *Legal prejudice*, BLACK'S LAW DICTIONARY (10th ed. 2014). Keystone has shown neither.

[12] Because the district court excluded all of Keystone's damages evidence on its own claims, Keystone's only remaining hope of recovering any monetary damages was to be expelled from Inside and to be paid the fair market value of its interest in Inside.

discovery. Keystone failed to meet the clearly articulated disclosure requirements of rule 26 and the district court did not abuse its discretion in finding that this failure was neither excused for good cause nor harmless to the defendant Inside. So too did the district court accurately differentiate this case's complexity and Keystone's recalcitrance in providing a computation of its damages from the more straightforward set of facts presented in *Williams*. Lastly, Keystone has suffered no prejudice and has forfeited no rights by the dismissal of Inside's counterclaim for expulsion. Keystone remains a member of Inside and the district court did not abuse its discretion in dismissing Inside's counterclaim. Affirmed.

————————