2020 UT App 105

## THE UTAH COURT OF APPEALS

ANGELA SEGOTA,
Appellant,
*v.*
YOUNG 180 CO. DBA YOUNG CHRYSLER, AND
NATIONWIDE MUTUAL INSURANCE COMPANY,
Appellees.

Opinion
No. 20190253-CA
Filed July 9, 2020

Second District Court, Farmington Department
The Honorable Michael S. Edwards
No. 180700133

Brian W. Steffensen, Attorney for Appellant

Nicholas K. Hart, Attorney for Appellees

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER
and DIANA HAGEN concurred.

HARRIS, Judge:

¶1     Feeling dissatisfied with a truck purchase, Angela Segota sued the car dealership that sold her the truck—Young 180 Co. (Young)—and its bond company—Nationwide Mutual Insurance Company (Nationwide)—for, among other things, breach of contract and fraud. After filing suit, however, Segota failed to serve initial disclosures and took no meaningful action in the case for the entire duration of the fact discovery period. Both defendants moved for summary judgment, asserting that because Segota had not disclosed any witnesses or evidence, her case should be dismissed. The district court granted those motions, and Segota now appeals. We affirm.

BACKGROUND

¶2     Segota purchased a truck from Young. According to Segota, she and Young agreed that the truck would come equipped with certain features. After taking delivery of the truck, Segota discovered that it did not include all of the features she claims Young promised it would have. According to Segota, Young refused to repair the truck to add the missing features. Dissatisfied with her purchase and with Young's response to her requests, she filed suit against various entities, including both Young and Nationwide, asserting various causes of action, most notably breach of contract and fraud.

¶3     Soon after Nationwide answered Segota's complaint, the district court issued a Notice of Event Due Dates, setting deadlines for, among other things, each party's initial disclosures and the completion of fact discovery. Nationwide served initial disclosures that were only one business day late; Segota and Young did not serve initial disclosures at all, at least not until after the fact discovery deadline had run.

¶4     During the entire fact discovery period, Segota's only actions in the case consisted of an early unsuccessful effort to obtain a default judgment against Young, and the filing of a notice dismissing her claims against all entities other than Young and Nationwide. During this time, Segota did not serve initial disclosures, did not propound written discovery requests, did not notice any depositions, and filed no substantive motions.

¶5     About two weeks before the deadline for completing fact discovery, Nationwide filed a motion for summary judgment, pointing out that Segota had taken no meaningful action in the case, and noting that she had not served initial disclosures identifying any witnesses or documents supporting her claims. Nationwide argued that, as a penalty for her failure to disclose witnesses or documents, Segota should be barred from using any witnesses or documents at

trial and that, under such circumstances, Segota would then be unable to prove her claims. On this basis, Nationwide asked the district court to enter summary judgment against Segota and dismiss her complaint.

¶6      Segota failed to respond to Nationwide's motion until after the fact discovery deadline had passed. Thereafter, she filed a series of motions for extensions of time to respond to Nationwide's motion, but did not ever submit those motions for the court's decision. A few weeks later, she filed a motion asking the court to extend the now-expired fact discovery deadline, as well as a belated memorandum in opposition to Nationwide's motion. On that same day, nearly four weeks after the passing of the fact discovery deadline, she also finally served initial disclosures on Young and Nationwide, informing them for the first time which witnesses and documents she planned to use to prove her claims.

¶7      A few weeks later, after a change of counsel, Young finally served its initial disclosures; neither Young's disclosures nor Segota's disclosures are in the record before us, but Young's attorney later acknowledged, during an oral argument, that Young's initial disclosures were "identical" to Segota's, in that they identified the same witnesses and documents. A few weeks after that, Young filed a motion for summary judgment, asking the court to dismiss Segota's complaint for the same reasons Nationwide articulated in its motion. Segota did not timely respond to that motion; instead, Segota sought an extension of time, but did not submit that request to the court, and did not file a memorandum opposing Young's motion until nearly three months had elapsed since the motion was filed. Moreover, Segota's belated opposition was filed on the morning of the day on which oral argument on both defendants' motions was scheduled; due to Segota's late filing, Young did not have the chance to file a reply brief.

¶8      After oral argument, the court denied Segota's motions to extend the deadlines for completion of fact discovery and for

responding to the defendants' summary judgment motions.[1] In addition, the court determined that Segota's initial disclosures "were provided too late to allow for meaningful discovery"; as a consequence, the court imposed the sanction referred to in the Utah Rules of Civil Procedure, namely, that Segota "may not use the undisclosed witness[es] and document[s] . . . at any hearing or trial unless the [discovery violation] is harmless or the party shows good cause for the failure." *See* Utah R. Civ. P. 26(d)(4). The court then concluded that Segota's discovery violation was neither harmless nor justified by any good cause. Because Segota was therefore without evidence to support her claims, the court granted the defendants' summary judgment motions, and ordered that Segota's complaint against both Nationwide and Young be dismissed with prejudice.

---

1. Toward the end of the argument, the court expressed its displeasure with a statement Segota's counsel made in the memoranda opposing the defendants' summary judgment motions, where counsel characterized the motions as "feckless." The court brought up the references on its own, and told counsel to "remember to always be courteous," and expressed its view that it was discourteous "to refer to opposing counsel's arguments as 'feckless.'" On appeal, Segota argues that the court's sua sponte expression of disapproval of counsel's word choice indicates that the court was biased against her or her attorney. We disagree. "A judge's behavior toward a party during court proceedings must be extreme to warrant a finding" of bias or prejudice on the part of the judge. *Poulsen v. Frear*, 946 P.2d 738, 742 (Utah Ct. App. 1997). The district court's mild admonition of Segota's attorney fell far short of this standard. We find nothing at all improper with the court's effort to encourage civility and professionalism, and certainly do not interpret the court's actions as indicative of bias.

ISSUES AND STANDARDS OF REVIEW

¶9    Segota now appeals, and asks us to consider two issues. First, she takes issue with the district court's denial of her motions for extension of various deadlines, including the deadline for completion of fact discovery and the deadline for responding to the defendants' summary judgment motions. We review a district court's decisions regarding the management of its docket, including whether to grant continuances or extend deadlines, for abuse of discretion. *See Solis v. Burningham Enters., Inc.*, 2015 UT App 11, ¶ 25, 342 P.3d 812 (stating that "[district] courts have broad discretion in managing the cases assigned to their courts," including discretion in considering whether to amend "discovery deadlines" (quotation simplified)); *State v. Bergeson*, 2010 UT App 281, ¶ 7, 241 P.3d 777 (stating that a district court possesses "discretion to manage its docket and set firm deadlines for motion practice").

¶10   Second, Segota challenges the court's decision to impose a sanction upon her for failing to timely serve initial disclosures, and then determining, based on that sanction, to enter summary judgment against her for lack of evidence. "We review a district court's decision on sanctions under rule 26(d)(4) . . . for an abuse of discretion." *Keystone Ins. Agency, LLC v. Inside Ins., LLC*, 2019 UT 20, ¶ 12, 445 P.3d 434. And we review a district court's grant of summary judgment for correctness, affording that ruling no deference. *See Ruiz v. Killebrew*, 2020 UT 6, ¶ 7, 459 P.3d 1005.

ANALYSIS

A

¶11   We begin by addressing Segota's challenge to the district court's denial of her motions requesting an extension of the deadlines for completion of fact discovery and for responding to the summary judgment motions. Segota argues that the district court exceeded its discretion in denying these motions, at least in

part because the defendants did not oppose them in writing. But we perceive no abuse of discretion here.

¶12    After filing the lawsuit, Segota took no meaningful action to prosecute it until after the deadline for completion of fact discovery had expired. During that period, Segota not only failed to serve initial disclosures, but failed to conduct discovery of any kind, and did not make any motions or seek any sort of relief from the court. Segota took meaningful action in the case only after Nationwide filed a summary judgment motion, and even then Segota's actions were belated.

¶13    In her motions, Segota offered several reasons—none necessarily convincing—why the court should extend various deadlines. First, she asserted that the "case ha[d] essentially just begun"; this claim was incorrect, given that the fact discovery deadline had already passed. Second, she noted that, at the time, "[n]o discovery ha[d] been undertaken by any party," a true assertion but one that the district court considered a problem rather than a ground for extension. Third, Segota's counsel noted that he had moved offices, taken a vacation, sustained an injury, and experienced the death of an elderly family member, assertions we take at face value and which could prompt a district court to grant a motion for an extension, but which certainly do not compel that result, especially where, as here, the requesting party does not submit the motions for decision in a timely fashion and, with regard to one of the memoranda, files it on the morning of the scheduled hearing.

¶14    In this situation, the court was well within its discretion to find these asserted grounds insufficient for an extension of deadlines. As noted, district courts have "substantial discretion" in deciding whether to grant a requested continuance or extension. *See Brown v. Glover*, 2000 UT 89, ¶ 43, 16 P.3d 540 (quotation simplified). A court's decision in this regard "will not be overturned unless that discretion has been clearly abused." *Id.*; *see also Berger v. Ogden Reg'l Med. Center*, 2020 UT App 85, ¶¶ 15, 30–33 (stating that an appellate court will reverse a

district court's denial of a motion to extend discovery deadlines "only if there is no reasonable basis for the district court's decision" (quotation simplified)). On the record before us, we cannot say that the district court's decisions denying Segota's requested extensions constituted an abuse of its discretion.

B

¶15　Next, we address Segota's challenge to the district court's decision to sanction her, pursuant to rule 26(d)(4) of the Utah Rules of Civil Procedure, for her failure to timely serve initial disclosures, and then to determine, on the basis of that sanction, that summary judgment in favor of the defendants was proper because Segota had no evidence to support her case.

¶16　Initial disclosure requirements are an important part of our discovery system. Our rules unambiguously require parties—"without waiting for a discovery request"—to provide to their litigation opponents, among other things, the identity of "each fact witness" the party may call at trial and a copy of all documents the party "may offer" at trial. *See* Utah R. Civ. P. 26(a)(1). Plaintiffs must make these disclosures "within 14 days after" the filing of "the first answer to the complaint." *Id.* R. 26(a)(2)(A). Our supreme court has recently emphasized the importance of these disclosure requirements, especially on the plaintiff's side, stating as follows:

> For a defendant, disclosing one's case-in-chief hinges to a large extent upon the disclosures provided by the plaintiff. A defendant must understand the claims brought by the plaintiff in order to prepare a case-in-chief. The need for the plaintiff to first furnish its disclosures . . . and theory of the case is by design of the Rules.

*Keystone Ins. Agency, LLC v. Inside Ins., LLC*, 2019 UT 20, ¶ 18, 445 P.3d 434 (quotation simplified).

¶17   And the rules themselves set forth an anticipated penalty that should ordinarily be imposed upon litigants who fail to make these disclosures: "If a party fails to disclose or to supplement timely a disclosure or response to discovery, that party may not use the undisclosed witness, document or material at any hearing or trial unless the failure is harmless or the party shows good cause for the failure." Utah R. Civ. P. 26(d)(4). The drafters of the rules emphasized this penalty in the advisory committee notes, stating as follows:

> The penalty for failing to make timely disclosures is that the evidence may not be used in the party's case-in-chief. To make the disclosure requirement meaningful, and to discourage sandbagging, parties must know that if they fail to disclose important information that is helpful to their case, they will not be able to use that information at trial. The courts will be expected to enforce them unless the failure is harmless or the party shows good cause for the failure.

*Id.* R. 26 advisory committee notes; *see also Keystone*, 2019 UT 20, ¶ 16 n.4 (discussing the advisory committee notes).

¶18   It is undisputed that Segota did not timely serve initial disclosures. Indeed, she finally made those disclosures only after the entire fact discovery period had run, and after Nationwide had already moved for summary judgment. The district court declined Segota's invitation to extend the discovery deadlines, including the deadline for serving initial disclosures. Thus, Segota clearly violated rule 26(a)'s disclosure requirement.

¶19   Under the plain terms of rule 26(d)(4), Segota's discovery violation carries a specific penalty: Segota "may not use" any "undisclosed" witnesses or documents "at any hearing or trial," unless she "shows good cause" for her failure, or her failure is deemed "harmless." Utah R. Civ. P. 26(d)(4). The district court

determined that "no good cause ha[d] been demonstrated," and that Segota's untimely disclosures were "not without harm." Accordingly, the district court concluded that rule 26(d)(4) "must be enforced as written," and that Segota would not be allowed to use any witnesses or documents at trial.

¶20 On appeal, Segota does not assert that there was any "good cause" for her failure to timely serve initial disclosures. However, she does argue that her disclosure violation was harmless, and challenges the district court's conclusion to the contrary, a conclusion we review for abuse of discretion. *See Ghidotti v. Waldron*, 2019 UT App 67, ¶ 18, 442 P.3d 1237. In so doing, Segota makes two arguments.

¶21 First, Segota points to Young's admission that Segota's initial disclosures were "identical" to Young's own disclosures, and asserts that the defendants could not have been surprised by anything in her belated disclosures because they were already aware of the witnesses and documents listed there. Under such circumstances, Segota contends that her failure to disclose was harmless.[2] But on the facts of this case, we do not view it as an abuse of discretion for the district court to have concluded otherwise. Although the defendants might have—before receiving Segota's disclosures—made some assumptions, or even had suspicions, about the identity of the witnesses and evidence Segota might use in an attempt to prove her claims, they did not actually know the scope of Segota's case until finally receiving her belated disclosures. One party's ability to "guess at" what the other party's disclosures might be, had they

---

2. Depending on the circumstances, a district court could conceivably determine, within its discretion, that a defendant whose opponent failed to serve initial disclosures was harmed only to the extent that the non-disclosing plaintiff attempted to use witnesses and documents not listed in the defendant's own disclosures. Segota invited the district court to make such a ruling in this case, but the district court declined that invitation.

been timely made, does not relieve the other party from its obligation to definitively inform her litigation opponent, through disclosures, about the witnesses and documents she plans to use to prove her case. *See Keystone*, 2019 UT 20, ¶ 20. And by the time the defendants actually received Segota's disclosures, as the district court noted, their opportunity to conduct meaningful fact discovery had come and gone. We cannot say that the district court abused its discretion by concluding that the defendants—who, at the conclusion of the fact discovery period, knew nothing specific about the scope of Segota's case—had been harmed by Segota's failure to disclose.

¶22 Second, and relatedly, Segota contends that the district court could easily have ameliorated the harm visited upon the defendants by her late disclosures simply by granting her motion to extend the discovery deadlines. But if the district court had granted her motion for extension, the defendants would still have been subject to a lengthy delay in the case—a delay they played no role in creating. Moreover, Segota's dilatory behavior caused the defendants to file and litigate motions, necessitating the expenditure of attorney fees and costs, related to Segota's discovery violations; had the court granted Segota's motion to extend the discovery deadlines, these efforts would have been rendered without effect. We acknowledge that another judge might have determined that the defendants' harm could have been remedied in a different way, perhaps through an assessment of attorney fees and costs against Segota imposed in connection with an extension of the deadlines. But we cannot say that the district court abused its discretion in acting as it did, and in determining that Segota's actions were not harmless. *See Berger v. Ogden Reg'l Med. Center*, 2020 UT App 85, ¶ 33 (noting that a court's decision in discovery matters is "a discretionary call," and that we will affirm such decisions when the court's discretion was not abused, even if we or another court might have made a different decision in the first instance). Indeed, we have already determined that the court did not abuse its discretion by denying Segota's motions for extensions of time. We likewise conclude that the court did not abuse its discretion

in concluding, at least implicitly, that delaying the case to allow Segota a second opportunity to properly make disclosures and conduct discovery would cause harm to the defendants.

¶23 In short, the district court did not exceed its discretion by imposing the rule 26(d)(4) sanction, where Segota failed to serve initial disclosures and, in addition, failed to take any meaningful action in the case during the entire fact discovery period. While in appropriate cases courts might find such behavior harmless or justified by good cause, the district court's determination in this case does not fall outside the bounds of its discretion. *See Sleepy Holdings LLC v. Mountain West Title*, 2016 UT App 62, ¶ 28, 370 P.3d 963 (stating that, where a "district court's sanctions ruling, while perhaps not the only permissible one under the circumstances, nevertheless fell well within the limits of its discretion," we will not overturn it).

¶24 Finally, we address Segota's contention that the district court erred by entering summary judgment in the defendants' favor. But the court's summary judgment decision follows logically from its imposition of the discovery sanction. Because of that sanction, Segota was barred from using, "at any hearing or trial," any witnesses or documents that she failed to timely disclose. *See* Utah R. Civ. P. 26(d)(4). Because she timely disclosed no witnesses or documents, and because the district court imposed the rule 26(d)(4) sanction upon her, Segota was not entitled to use any witnesses or documents at trial. A litigant in such a situation has no way to prove her case. And under such circumstances, the district court did not err by granting summary judgment in the defendants' favor.[3] *See id.* R. 56(a).

---

3. We note that the district court's summary judgment ruling was based on its discovery sanction, and not solely on Segota's failure to file a timely response to the defendants' summary judgment motions. A district court is not permitted to grant a summary judgment motion on the sole ground that the motion is

(continued…)

CONCLUSION

¶25    The district court did not abuse its discretion in denying Segota's motions for extensions of various deadlines, and did not abuse its discretion in imposing the sanction set out in rule 26(d)(4) for Segota's failure to timely serve initial disclosures. And because that sanction left Segota without evidence to support her claims, the district court did not err in granting the defendants' summary judgment motions.

¶26    Affirmed.

-----

(…continued)

unopposed, *see* Utah R. Civ. P. 56(e)(3); *Tronson v. Eagar*, 2019 UT App 212, ¶ 17 & n.6, 457 P.3d 407 ("Summary judgment may not be entered against the nonmoving party merely by virtue of a failure to oppose." (quotation simplified)), and we do not perceive that the district court did so here.